UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SECHANCIA SHAW, DONNA JOHNSON, MARIE WOSKOLUB, and ANTONIO BOWSER<br><br>    Plaintiffs,<br>vs.<br><br>LEVYLAW, LLC and BART E. LEVY,<br>    Defendants. | CIVIL ACTION<br>No. |

## COMPLAINT

### PRELIMINARY STATEMENT

1. This is an action brought under the federal Fair Debt Collection Practices Act against a high-volume debt collection lawyer who engaged in abusive debt collection practices perpetrated against low-income tenants. The lawyer, Bart E. Levy, and his firm, LevyLaw LLC (collectively the "Defendants") used false, deceptive, and misleading statements for the purpose of collecting rent which he knew was not legally due and filing to evict tenants when he knew he was not legally entitled to do so.

2. In the interest of public health and economic stability during the COVID-19 pandemic, the federal government, the Commonwealth of Pennsylvania, and the City of Philadelphia all instituted temporary moratoria on sending eviction notices (notices to quit), filing eviction lawsuits, and performing evictions.

10

3. As an additional measure, the Philadelphia Municipal Court, where landlord-tenant cases are heard, completely suspended the filing of eviction lawsuits between March 17, 2020, and July 12, 2020.

4. On July 13, 2020, the Philadelphia Municipal Court began accepting new eviction filings, however the Court issued Order No. 48 of 2020, paragraph 3 cautioning landlords to review the various moratoria still in place on the state and local level before filing an eviction lawsuit to see whether a filing was permitted.

5. Defendants file hundreds of eviction actions per year and are well versed in the ever-changing requirements for filing such cases.

6. Despite the widely publicized eviction moratoria and the Court's order, Defendants filed eighteen (18) eviction lawsuits between July 13, 2020, and August 31, 2020, and sent at least as many notices to quit to tenants.

7. The actions the Defendants have taken against the Plaintiffs in this case are emblematic of how the Defendants have repeatedly and knowingly threatened to take legal actions they were not legally allowed to take in the course of attempting to collect alleged debts they were not legally allowed to collect.

8. These unlawful and deceptive actions on part of the Defendants have not only threatened the health and wellbeing of the Plaintiffs, but that of the public at large by forcing tenants to search for new housing during a pandemic, thereby exposing themselves and others to COVID-19.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this matter under 15 U.S.C. § 1692k and 28 U.S.C. § 1331.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), in that a substantial part of the events giving rise to the claims occurred in this district.

## PARTIES

11. Plaintiff Sechancia Shaw ("Plaintiff Shaw"), Plaintiff Donna Johnson ("Plaintiff Johnson"), Plaintiff Marie Woskolub ("Plaintiff Woskolub"), and Plaintiff Antonio Bowser ("Plaintiff Bowser") (collectively, the "Plaintiffs") are all Pennsylvania consumers.

12. Plaintiff Shaw currently resides at 4924 N 8th St, Philadelphia, PA 19120.

13. Plaintiff Johnson currently resides at 848 E Locust Ave, Philadelphia, PA 19138.

14. Plaintiff Woskolub currently resides at 3531 Englewood St, 1st Floor, Philadelphia, PA 19149.

15. Plaintiff Bowser resided at 1132 W Venango St Philadelphia, PA 19140 during the events related to the present case.

16. Defendant LevyLaw, LLC is a Pennsylvania corporation, registered at 1515 Market Street, Suite 805, Philadelphia, PA 19102.

17. Defendant Bart E. Levy is, upon information and belief, a licensed Pennsylvania attorney, and the principal shareholder of Defendant LevyLaw, LLC. Upon information and belief, he conducts his practice at 1515 Market Street, Suite 805, Philadelphia, PA 19102.

**FACTS RELATED TO THE EVICTION MORATORIA**

18.     In response to the COVID-19 pandemic, Governor Wolf issued a widely-publicized[1] Order (the "Governor's Moratorium") on May 7, 2020, that "[a]ll eviction proceedings requiring compliance with the Landlord and Tenant Act of 1951 and the Manufactured Home Community Rights Act cannot commence for 60 days until July 10, 2020." (See Exhibit A).

19.     On May 22, 2020, Governor Wolf modified the Governor's Moratorium to "apply only to matters involving the nonpayment of monies as well as to those proceedings related to removal of any tenant solely because the tenant has held over or exceeded the term of a lease." (See Exhibit B).

20.     On July 9, 2020, Governor Wolf extended the Governor's Moratorium through August 31, 2020, which was also widely reported in local and national news[2]. (See Exhibit C).

21.     On July 1, 2020, Philadelphia's Mayor James Kenney signed into law a widely-publicized[3] package of bills that City Council had passed unanimously, collectively referred to as the Emergency Housing Protection Act in response to the COVID-19 pandemic. Part of that package was the Eviction Relief bill (Bill No. 200295), which provided that until August 31,

---

[1] *See, e.g.*, https://www.inquirer.com/health/coronavirus/coronavirus-pennsylvania-evictions-foreclosures-governor-tom-wolf-josh-shapiro-attorney-general-20200507.html (print and online Inquirer article covering the Governor's Order that "[n]o one in Pennsylvania can be evicted or have their home foreclosed on due to inability to pay until at least July 10") and https://philadelphia.cbslocal.com/2020/05/07/coronavirus-pennsylvania-gov-wolf-extends-moratorium-on-evictions-foreclosures-by-2-months/ (local television news segment and online article covering the Governor's order "forbidding" evictions for 60 days).

[2] *See, e.g.*, https://www.inquirer.com/health/coronavirus/spl/pennsylvania-eviction-moratorium-august-31-rental-assistance-20200709.html (print and online Inquirer article covering the extension of the Governor's Order) and https://apnews.com/7b154d1ca215db646437b23950187a1b (an Associated Press article picked up by several outlets covering the extension of the Governor's Order).

[3] *See, e.g.*, https://www.inquirer.com/real-estate/housing/rent-relief-emergency-housing-philadelphia-city-council-20200618.html (print and online Inquirer describing the contents and the passage of the Philadelphia City Council bills collectively known as the Emergency Housing Protection Act) and https://philadelphia.cbslocal.com/2020/05/29/philadelphia-city-council-holds-virtual-hearing-on-emergency-housing-protection-plan/ (a local television news segment covering the Emergency Housing Protection Act).

2020, "the only legal basis for evicting a residential tenant in Philadelphia shall be to cease or prevent an imminent threat of harm by the person being evicted, including physical harm or harassment, and it shall be unlawful for a landlord to take any steps in furtherance of recovering possession of a residential premises rented by a tenant on any other basis" (the "EHPA Moratorium"). (See Exhibit D).

22. In addition to establishing the EHPA Moratorium, the Emergency Housing Protection Act required landlords to send tenants an additional notice (the "EHPA Notice") prior to seeking eviction for nonpayment of rent. Bill No. 200305, referred to as the Hardship Repayment Agreement bill, provided that until May 31, 2021, "the nonpayment of rent shall not be a legal basis to evict a tenant unless" several conditions are met including the landlord sending the EHPA Notice which explicitly contains the following language:

> "YOU MAY BE ELIGIBLE FOR CERTAIN HOUSING PROTECTIONS. IF YOU HAVE EXPERIENCED A FINANCIAL HARDSHIP DUE TO COVID-19 THIS MAY INCLUDE, BUT IS NOT LIMITED TO, A NINE (9) MONTH REPAYMENT PLAN TO PAY PAST DUE RENT. YOU MUST PROVIDE YOUR LANDLORD A CERTIFICATION OF HARDSHIP TO QUALIFY FOR SOME OF THESE PROTECTIONS."

(See Exhibit E).

23. On July 13, 2020, the Philadelphia Municipal Court issued an order stating that landlords should review the relevant sections of the Federal CARES Act, the Governor's Order, and the Emergency Housing Protection Act before filing an eviction lawsuit. (See Exhibit F).

24. Despite the ongoing eviction moratoria, Defendants continued sending notices to quit and filing eviction lawsuits against Plaintiffs and other tenants, as set forth in detail below.

25. On August 3, 2020, Community Legal Services sent Defendants a letter via email advising Defendants that by sending notices and filing eviction lawsuits that violate the Governor's Moratorium and the EHPA Moratorium Defendants were opening themselves up to liability under the Fair Debt Collection Practices Act ("FDCPA"). (See Exhibit G).

### FACTS RELATED TO PLAINTIFF SHAW

26. In August 2018, Plaintiff Shaw signed a lease to rent a unit at 4924 N 8th St, Philadelphia, PA 19120 (the "Shaw Property") for herself and her two children.

27. Unbeknownst to Plaintiff Shaw, the property was not licensed as a rental property with the City and, therefore, it was illegal for the owner to collect rent. She unknowingly paid this illegal rent from August 2018 until January 2020.

28. Plaintiff Shaw was laid off from her position at Renaissance Real Estate Group in mid-March 2020 as a result of the COVID-19 pandemic.

29. On July 9, 2020, Defendants sent Plaintiff Shaw a notice to quit (the "Shaw Notice") that identifies nonpayment of rent for February 2020 to July 2020 as a reason for the termination of Plaintiff Shaw's lease and includes an attempt to collect the allegedly unpaid rent. (See Exhibit H).

30. The Shaw Notice does not allege breach of the lease or imminent threat of harm by Plaintiff Shaw as a reason for the termination of Plaintiff Shaw's lease.

31. Both the Governor's Moratorium and the EHPA Moratorium barred Defendants from sending the Shaw Notice.

32. In sending the Shaw Notice, Defendants knowingly violated both the Governor's Moratorium and the EHPA Moratorium.

33. Neither Defendants nor Plaintiff Shaw's landlord provided Plaintiff Shaw with the required EHPA Notice.

34. On July 30, 2020, Defendants filed an eviction lawsuit in Philadelphia's Municipal Court on behalf of Nicholas Loscalzo, Plaintiff Shaw's landlord, against Plaintiff Shaw that included a demand for a judgment for possession and judgment for money allegedly owed from the allegedly unpaid rent of $6600 for February 2020 through July 2020. (See Exhibit I).

35. The complaint for the eviction lawsuit filed by Defendants against Plaintiff Shaw does not allege imminent threat of harm by Plaintiff Shaw as a basis for the eviction. (See Exhibit I).

36. Both the Governor's Moratorium and the EHPA Moratorium barred Defendants from filing an eviction lawsuit against Plaintiff Shaw.

37. By filing an eviction lawsuit against Plaintiff Shaw, Defendants knowingly violated both the Governor's Moratorium and the EHPA Moratorium.

38. Defendants' actions caused Plaintiff Shaw — faced with the potential loss of her home — to lose sleep, and to feel intense stress, worry, frustration, anguish, and fear.

39. Defendants' actions also forced Plaintiff Shaw to expend time and resources in order to engage a lawyer to protect herself from the potential loss of her home.

40. On July 30, 2020, the Municipal Court issued a notice to Defendants that they had failed to provide the Court with a valid rental license for February 2020 through April 2020 and thus may not be allowed to collect any allegedly unpaid rent for that period. (See Exhibit J).

## FACTS RELATED TO PLAINTIFF WOSKOLUB

41. In March 2008, Plaintiff Woskolub signed a lease to rent 3531 Englewood St, 1st Floor, Philadelphia, PA 19138 (the "Woskolub Property").

42. On July 9, 2020, Defendants sent Plaintiff Woskolub a notice to quit (the "Woskolub Notice") that identifies nonpayment of rent between April 2020 and July 2020 as the reason for the termination of Plaintiff Woskolub's lease and includes an attempt to collect the allegedly unpaid rent. (See Exhibit K).

43. The Woskolub Notice does not allege breach of lease or imminent threat of harm by Plaintiff Woskolub as a reason for the termination of Plaintiff Woskolub's lease.

44. Both the Governor's Moratorium and the EHPA Moratorium barred Defendants from sending the Woskolub Notice.

45. In sending the Woskolub Notice, Defendants knowingly violated both the Governor's Moratorium and the EHPA Moratorium.

46. Neither Defendants nor Plaintiff Woskolub's landlord provided Plaintiff Woskolub with the required EHPA Notice.

47. On July 28, 2020, Defendants filed an eviction lawsuit in Municipal Court on behalf of Richard Turchi, Plaintiff Woskolub's landlord, against Plaintiff Woskolub that included a demand for a judgment for possession and judgment for money allegedly owed from the allegedly unpaid rent of $2460 for April 2020 through July 2020. (See Exhibit L).

48. The complaint for the eviction lawsuit filed by Defendants against Plaintiff Woskolub does not allege breach of lease or imminent threat of harm by Plaintiff Woskolub as a basis for the eviction. (See Exhibit L).

49. Both the Governor's Moratorium and the EHPA Moratorium barred Defendants from filing an eviction lawsuit against Plaintiff Woskolub.

50. By filing an eviction lawsuit against Plaintiff Woskolub, Defendants knowingly violated both the Governor's Moratorium and the EHPA Moratorium.

51. Defendants' above described actions caused Plaintiff Woskolub — faced with the potential loss of her home — to lose sleep, and to feel intense stress, worry, frustration, anguish, and fear.

52. Defendants' actions also forced Plaintiff Woskolub to expend time and resources in order to engage a lawyer to protect herself from the potential loss of her home.

**FACTS RELATED TO PLAINTIFF BOWSER**

53. In April 2019, Plaintiff Bowser signed a lease to rent a unit at 1132 W Venango St, 2nd Floor, Philadelphia, PA 19140 ("the Bowser Property") with his brother and sister-in-law.

54. In February 2020, Plaintiff Bowser signed an updated lease to rent the Bowser Property after his brother passed away.

55. On July 2, 2020, Calah Self, Defendants' client and Plaintiff Bowser's landlord, sent Plaintiff Bowser a notice to quit (the "First Bowser Notice") stating that Plaintiff Bowser owed $750 in unpaid rent. (See Exhibit M).

56. The First Bowser Notice does not allege imminent threat of harm by Plaintiff Bowser as a reason for the termination of Plaintiff Bowser's lease.

57. Calah Self was barred from sending Plaintiff Bowser the First Bowser Notice by both the Governor's Moratorium and the EHPA Moratorium.

58. On July 7, 2020, Plaintiff Bowser paid Calah Self $750.

59. On July 9, 2020, Defendants sent Plaintiff Bowser a notice to quit (the "Second Bowser Notice") that included nonpayment of rent as a reason for the termination of Plaintiff Bowser's lease and an attempt to collect the allegedly unpaid rent. (See Exhibit N).

60. The Second Bowser Notice does not allege imminent threat of harm by Plaintiff Bowser as a reason for the termination of Plaintiff Bowser's lease.

61. Both the Governor's Moratorium and the EHPA Moratorium barred Defendants from sending the Second Bowser Notice.

62. In sending the Second Bowser Notice, Defendants knowingly violated both the Governor's Moratorium and the EHPA Moratorium.

63. Neither Defendants nor Plaintiff Bowser's landlord provided Plaintiff Bowser with the required EHPA Notice.

64. On July 28, 2020, Defendants filed an eviction lawsuit in Municipal Court on behalf of Calah Self against Plaintiff Bowser that included a demand for a judgment for possession and judgment for money allegedly owed from the allegedly unpaid rent of $750. (See Exhibit O).

65. The complaint for the eviction lawsuit filed by Defendants against Plaintiff Bowser does not allege breach or imminent threat of harm by Plaintiff Bowser as an issue for the eviction. (See Exhibit O).

66. On July 31, 2020, Plaintiff Bowser moved out of the Bowser Property in response to the notices and filing of the eviction lawsuit.

67. While moving out of the Bowser Property, Plaintiff Bowser missed two days of work and incurred several moving expenses including but not limited to renting a moving van.

68. As a result of the COVID-19 pandemic, Plaintiff Bowser has been unable to find housing of his own and has been forced to move in with a family member.

69. Both the Governor's Moratorium and the EHPA Moratorium barred Defendants from filing an eviction lawsuit against Plaintiff Bowser.

70. By filing an eviction lawsuit against Plaintiff Bowser, Defendants knowingly violated both the Governor's Moratorium and the EHPA Moratorium.

71. Defendants' above described actions caused Plaintiff Bowser — faced with the potential loss of his home — to lose sleep, and to feel intense stress, worry, frustration, anguish, and fear.

72. Defendants' actions also forced Plaintiff Bowser to expend time and resources in order to engage a lawyer to protect himself from the potential loss of his home.

## FACTS RELATED TO PLAINTIFF JOHNSON

73. In May 2019, Plaintiff Johnson signed a lease to rent a unit at 848 Locust Ave, Philadelphia, PA 19138 (the "Johnson Property").

74. Starting in March 2020, Plaintiff Johnson's hours at work at Care and Help Healthcare were reduced as a result of the COVID-19 pandemic.

75. On July 9, 2020, Defendants sent Plaintiff Johnson a notice to quit (the "Johnson Notice") that identifies nonpayment of rent for July 2020 as the reason for the termination of Plaintiff Johnson's lease and includes an attempt to collect the allegedly unpaid rent. (See Exhibit P).

76. The Johnson Notice does not allege breach of the lease or imminent threat of harm by Plaintiff Johnson as a reason for the termination of Plaintiff Johnson's lease.

10

77. Both the Governor's Moratorium and the EHPA Moratorium barred Defendants from sending the Johnson Notice.

78. In sending the Johnson Notice, Defendants knowingly violated both the Governor's Moratorium and the EHPA Moratorium.

79. Neither Defendants nor Plaintiff Johnson's landlord provided Plaintiff Johnson with the required EHPA Notice.

80. Ignoring not only the ongoing eviction moratoria but also the warning letter Community Legal Services sent Defendants on August 3, 2020, Defendants filed an eviction lawsuit in Municipal Court on August 12, 2020, on behalf of Carl Defilippo, Plaintiff Johnson's landlord, against Plaintiff Johnson that included a demand for a judgment for possession and judgment for money allegedly owed from the allegedly unpaid rent of $1760 for July 2020 through August 2020. (See Exhibit Q).

81. The complaint for the eviction lawsuit filed by Defendants against Plaintiff Johnson does not allege breach of lease or imminent threat of harm by Plaintiff Johnson as a basis for the eviction. (See Exhibit Q).

82. Both the Governor's Moratorium and the EHPA Moratorium barred Defendants from filing an eviction lawsuit against Plaintiff Johnson.

83. By filing an eviction lawsuit against Plaintiff Johnson, Defendants knowingly violated both the Governor's Moratorium and the EHPA Moratorium.

84. Defendants' above described actions caused Plaintiff Johnson — faced with the potential loss of her home — to lose sleep, and to feel intense stress, worry, frustration, anguish, and fear.

85.     Defendants' actions also forced Plaintiff Johnson to expend time and resources in order to engage a lawyer to protect herself from the potential loss of her home.

## COUNT I: FAIR DEBT COLLECTION PRACTICES ACT

86.     Plaintiffs incorporate paragraphs one through eighty-five as if written fully herein.

87.     Defendants regularly attempt to collect consumer debts alleged to be due to another, and are debt collectors as that term is defined in the FDCPA. *See* 15 U.S.C. § 1692a(6).

88.     The money sought by the Defendants is a debt under the FDCPA. *See* 15 U.S.C. § 1692a(5).

89.     The statements related to the alleged debt, in both the notices to quit and the eviction complaints, were communications under the FDCPA. *See* 15 U.S.C. § 1692a(2).

90.     Defendants' actions described above were false, deceptive, misleading representations in connection with a debt. *See* § 1692e.

91.     Specifically, Defendants' actions involved the use of false representations and deceptive means to attempt to collect on a debt. *See* § 1692e(10).

92.     Defendants' actions were based on false representations of "the character, amount, or legal status" of an alleged debt. *See* § 1692e(2)(A).

93.     Defendants' actions constituted "threat[s] to take . . . action[s] that cannot legally be taken" in the course of collecting an alleged debt. *See* § 1692e(5).

94.     Defendants' actions caused Plaintiff Shaw — afraid of losing her home in the midst of a pandemic — to lose sleep, and to feel intense stress, worry, frustration, anguish, and fear.

95. Plaintiff Shaw was forced to spend time and resources to find a lawyer, incurring additional monetary damages.

96. Defendants' actions caused Plaintiff Johnson — afraid of losing her home in the midst of a pandemic — to lose sleep, and to feel intense stress, worry, frustration, anguish, and fear.

97. Plaintiff Johnson was forced to spend time and resources to find a lawyer, incurring additional monetary damages.

98. Defendants' actions caused Plaintiff Woskolub — afraid of losing her home in the midst of a pandemic — to lose sleep, and to feel intense stress, worry, frustration, anguish, and fear.

99. Plaintiff Woskolub was forced to spend time and resources to find a lawyer, incurring additional monetary damages.

100. Defendants' actions caused Plaintiff Bowser — afraid of losing his home in the midst of a pandemic — to lose sleep, and to feel intense stress, worry, frustration, anguish, and fear.

101. Plaintiff Bowser was forced to spend time and resources to find a lawyer, incurring additional monetary damages.

102. Plaintiff Bowser was forced to expend time and resources while vacating the Bowser Property in response to Defendants' actions, incurring additional monetary damages.

103. The Defendants are liable to Plaintiffs for actual damages, statutory damages, and costs and attorney fees.

## JURY DEMAND

104. Plaintiffs demand a trial by jury on their claims.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that judgment be entered against defendants LevyLaw, LLC and Bart E. Levy for the following:

A. Actual damages;

B. Statutory damages pursuant to 15 U.S.C. § 1692k;

C. Costs and reasonable attorney fees pursuant to 15 U.S.C. §§ 1692k, 1692e(2), (5), and (10); and

D. For other such relief as the Court may deem just and proper.

                                              Respectfully submitted,

Dated: September 11, 2020               /s/ Vikram Patel
                                            Vikram Patel, Esq.

                                            Vikram Patel, Esq. (Bar No. 324387)
                                            Community Legal Services
                                            1424 Chestnut Street
                                            Philadelphia, PA 19102
                                            (215) 627-7100
                                            vpatel@clsphila.org

                                            Laura Smith, Esq. (Bar No. 322470)
                                            Community Legal Services
                                            1424 Chestnut Street
                                            Philadelphia, PA 19102
                                            (215) 981-3741
                                            lsmith@clsphila.org