**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

SECHANCIA SHAW, DONNA JOHNSON,
MARIE WOSKOLUB, and
ANTONIO BOWSER

      Plaintiffs,                                   CIVIL ACTION
      vs.                                             No.

LEVYLAW, LLC and BART E. LEVY,
      Defendants.

---

**EXHIBITS IN SUPPORT OF PLAINTIFFS COMPLAINT**

- Exhibit A: Governor Wolf's May 7, 2020 Executive Order established a moratorium on evictions and foreclosures.

- Exhibit B: Governor Wolf's May 21, 2020 Executive Order restricting the moratorium on evictions to nonpayment of rent cases.

- Exhibit C: Governor Wolf's July 9, 2020 Executive Order extending the moratorium on evictions and foreclosures.

- Exhibit D: Philadelphia City Council Bill No. 200295 commonly referred to as the Eviction Relief bill.

- Exhibit E: Philadelphia City Council Bill No. 200305 commonly referred to as the Eviction Relief bill.

- Exhibit F: Philadelphia City Municipal Court Administrative Order No. 48 of 2020.

- Exhibit G: Letter from Community Legal Services to Defendants advising them of liability under the Fair Debt Collection Practices Act.

- Exhibit H: Notice to Vacate sent to Plaintiff Sechancia Shaw by Defendants.

- Exhibit I: Complaint filed by Defendants against Plaintiff Sechancia Shaw.

- Exhibit J: Notice of Noncompliance issued against Defendants against Defendants in the landlord-tenant case Defendants filed against Plaintiff Shaw.
- Exhibit K: Notice to Vacate sent to Plaintiff Marie Woskolub by Defendants.
- Exhibit L: Complaint filed by Defendants against Plaintiff Marie Woskolub.
- Exhibit M: Notice to Vacate sent to Plaintiff Antonio Bowser by Calah Self, Mr. Bowser's landlord.
- Exhibit N: Notice to Vacate sent to Plaintiff Antonio Bowser by Defendants.
- Exhibit O: Complaint filed by Defendants against Plaintiff Antonio Bowser.
- Exhibit P: Notice to Vacate sent to Plaintiff Donna Johnson by Defendants.
- Exhibit Q: Complaint filed by Defendants against Plaintiff Donna Johnson.

# Exhibit A



COMMONWEALTH OF PENNSYLVANIA
OFFICE OF THE GOVERNOR

### ORDER OF THE GOVERNOR OF THE COMMONWEALTH OF PENNSYLVANIA FOR STAYING THE NOTICE REQUIREMENTS FOR CERTAIN ACTIONS RELATED TO THE DISPOSSESSION OF PROPERTY

*WHEREAS*, the World Health Organization and the Centers for Disease Control and Prevention ("CDC") have declared a novel coronavirus ("COVID-19") a "public health emergency of international concern," and the U.S. Department of Health and Human Services ("HHS") Secretary has declared that COVID-19 creates a public health emergency; and

*WHEREAS*, as of March 6, 2020, I proclaimed the existence of a disaster emergency throughout the Commonwealth pursuant to 35 Pa. C.S. § 7301(c); and

*WHEREAS*, I am charged with the responsibility to address dangers facing the Commonwealth of Pennsylvania and its residents that result from disasters. 35 Pa. C.S. § 7301(a); and

*WHEREAS*, in executing the extraordinary powers outlined above, I am further authorized during a disaster emergency to issue, amend and rescind executive orders, proclamations and regulations and those directives shall have the force and effect of law. 35 Pa. C.S. § 7301(b); and

*WHEREAS*, in addition to general powers, during a disaster emergency I am authorized specifically to control ingress and egress to and from a disaster area and the movement of persons within it and the occupancy of premises therein. 35 Pa. C.S. § 7301(f); and

*WHEREAS*, I am authorized to issue regulations to temporarily suspend or modify for a period not to exceed 60 days any public health, safety, zoning, transportation (within or across this Commonwealth) or other requirement of statute or regulation within this Commonwealth for which I deem the suspension or modification essential to provide temporary housing for disaster victims. 35 Pa. C.S. § 7302(a); and

*WHEREAS*, in addition to my authority, my Secretary of Health has the authority to determine and employ the most efficient and practical means for the prevention and suppression of disease. 71 P.S. § 532(a), 71 P.S. § 1403(a); and

*WHEREAS*, these means include isolation, quarantine, and any other control measure needed. 35 P.S. § 521.5; and

*WHEREAS*, I previously issued an Order directing "Individuals to Stay at Home" on April 1, 2020, as subsequently amended; and

*WHEREAS*, the Supreme Court of Pennsylvania issued Orders that acted to prevent the Judiciary from effectuating an eviction, ejectment or other displacement from a residence based upon a failure to make a monetary payment, but this statewide judicial suspension of procedures related to the dispossession of property extends only until May 11, 2020; and

*WHEREAS, certain filings, charges and acts relating to the dispossession of property remain subject to temporary restraints on account of other directives, including provisions of the federal Coronavirus Aid, Relief and Economic Security Act (CARES Act, P.L. 116-136; See also 15 U.S.C. § 9058), or Orders issued by local courts (e.g., Order No. 31 of 2020 of the First Judicial District of Pennsylvania, Administrative Governing Board of the First Judicial District of Pennsylvania, In re: Continuation of Judicial Emergency which directs that "The issuance of residential writs of possession, and the execution or enforcement of residential writs of possession issued by the Court of Common Pleas Office of Judicial Records before this date, remain STAYED until June 1, 2020 or until further order of court. Relief from the stay provided by this Order may be sought by filing an Emergency Petition setting forth the reason(s) for such relief."); and*

*WHEREAS, the CARES Act and other existing federal law and rules involving consumer protections related to single-family mortgages and certain multifamily dwellings creates confusion and uncertainty for the residents of the Commonwealth as to who has eviction and foreclosure protections related to COVID-19 remediation; and*

*WHEREAS, Pennsylvania law, the Loan Interest and Protection Law, 41 P.S. §101 et. seq. (Act 6) and the Homeowners Emergency Assistance Act, 35 P.S. § 1680.41 et. seq. (Act 91) requires that notice be provided to debtors for each and every foreclosure action that is initiated; and*

*WHEREAS, the Act 91 mandates that a mortgagor have a face-to-face meeting with a consumer credit counseling agency to attempt to resolve the delinquency or default by restructuring the loan payment schedule or otherwise and face-to-face meetings create a public health danger; and*

*WHEREAS, the Landlord and Tenant Act of 1951, 68 P.S. §250.101 et. seq., and the Manufactured Home Community Rights Act, 68 P.S. §398.1 et. seq., require that notice be provided to tenants and/or lessees when a landlord or manufactured home community owner intends to evict the tenant and/or lessee for nonpayment of rent; and*

*WHEREAS, the movement and/or displacement of individuals residing in Pennsylvania from their homes or residences during the current stage of the disaster emergency constitutes a public health danger to the Commonwealth in the form of unnecessary movement that increases the risk of community spread of COVID-19; and*

*WHEREAS, as of May 7, 2020, the Commonwealth of Pennsylvania has 52,915 persons who have tested positive or meet the requirements as probable cases for COVID-19 in all sixty-seven counties and reports 3,416 deaths from the virus.*

*NOW THEREFORE, pursuant to the authority vested in me and my Administration by the laws of the Commonwealth of Pennsylvania, I do hereby ORDER and PROCLAIM as follows:*

*Section 1:*

*Commencing on May 11, 2020, the notice requirements mandated by Act 6 and Act 91 are stayed for 60 days, thereby tolling the ability to commence the timelines and necessary Act 6 and Act 91 compliance that must be satisfied prior to the initiation of foreclosure actions. All foreclosures requiring compliance with Act 6 and Act 91 cannot commence for 60 days until July 10, 2020. All foreclosure timelines must be computed with a start date of July 10, 2020, at which point any previously delivered Act 6 and Act 91 notices will be deemed delivered and any foreclosure process may commence. The foreclosure actions requiring Act 6 and 91 compliance may proceed from that point forward in the normal course of action.*

**Section 2:**

Commencing on May 11, 2020, the notice requirements mandated by the Landlord and Tenant Act of 1951 and the Manufactured Home Community Rights Act are stayed for 60 days, thereby tolling the ability to commence the timelines necessary for the initiation of eviction proceedings. All eviction proceedings requiring compliance with the Landlord and Tenant Act of 1951 and the Manufactured Home Community Rights Act cannot commence for 60 days until July 10, 2020. All eviction timelines must be computed with a start date of July 10, 2020, at which point any previously delivered Landlord and Tenant Act of 1951 and Manufactured Home Community Rights Act notices will be deemed delivered and any eviction proceedings may commence. The eviction proceedings requiring compliance with the Landlord and Tenant Act of 1951 and the Manufactured Home Community Rights Act may proceed from that point forward in the normal course of action.

**Section 3: Effective Date and Duration**

This order is effective immediately and will remain in effect until July 10, 2020.



GIVEN under my hand and the Seal of the Governor, at the city of Harrisburg, on this seventh day of May two thousand twenty, the year of the commonwealth the two hundred and forty-fourth.

**TOM WOLF**
**Governor**

# Exhibit B



COMMONWEALTH OF PENNSYLVANIA
OFFICE OF THE GOVERNOR

### AMENDMENT TO THE ORDER OF
### THE GOVERNOR OF THE COMMONWEALTH OF PENNSYLVANIA
### FOR STAYING THE NOTICE REQUIREMENTS FOR
### CERTAIN ACTIONS RELATED TO THE DISPOSSESSION OF PROPERTY

*I hereby amend my Order for "Staying the Notice Requirements for Certain Actions Related to the Dispossession of Property" dated May 7, 2020.*

*The Order is amended to add a Section 4 to the Order as follows:*

*Section 4:  Scope of Order*

*The provisions of this Order and the suspension of the Acts under this Order apply only to matters involving the nonpayment of monies as well as to those proceedings related to removal of any tenant solely because the tenant has held over or exceeded the term of a lease. The Order does not apply to suspend notice requirements relating to evictions for breaches of any other covenants.*



*GIVEN under my hand and the Seal of the Governor, at the city of Harrisburg, on this twenty-first day of May two thousand twenty, the year of the commonwealth the two hundred and forty-fourth.*

**TOM WOLF**
**Governor**

# Exhibit C



COMMONWEALTH OF PENNSYLVANIA
OFFICE OF THE GOVERNOR

*ORDER OF*
*THE GOVERNOR OF THE COMMONWEALTH OF PENNSYLVANIA*
*STAYING NOTICE REQUIREMENTS FOR SPECIFIED ACTIONS*
*RELATED TO THE DISPOSSESSION OF PROPERTY*

**WHEREAS,** the World Health Organization and the Centers for Disease Control and Prevention ("CDC") have declared a novel coronavirus ("COVID-19") a "public health emergency of international concern," and the U.S. Department of Health and Human Services ("HHS") Secretary has declared that COVID-19 creates a public health emergency; and

**WHEREAS,** as of March 6, 2020, I proclaimed the existence of a disaster emergency throughout the Commonwealth pursuant to 35 Pa. C.S. § 7301(c); and

**WHEREAS,** because of the continued daily threat posed by COVID-19 and the need to maintain extraordinary efforts to combat and mitigate the effects of the virus, I renewed the Proclamation of Disaster Emergency on June 3, 2020; and

**WHEREAS,** in executing the extraordinary powers outlined above, I am further authorized during a disaster emergency to issue, amend and rescind executive orders, proclamations and regulations and those directives shall have the force and effect of law.  35 Pa. C.S. § 7301(b); and

**WHEREAS,** in addition to general powers, during a disaster emergency I am authorized specifically to control ingress and egress to and from a disaster area and the movement of persons within it and the occupancy of premises therein.  35 Pa. C.S. § 7301(f); and

**WHEREAS,** I am authorized to issue regulations to temporarily suspend or modify for a period not to exceed 60 days any public health, safety, zoning, transportation (within or across this Commonwealth) or other requirement of statute or regulation within this Commonwealth for which I deem the suspension or modification essential to provide temporary housing for disaster victims. 35 Pa. C.S. § 7302(a); and

**WHEREAS,** on May 7, 2020, I issued an order staying the notice requirements of certain actions related to the dispossession of property through July 10, 2020, and that order was subsequently amended to apply only to matters involving the nonpayment of monies as well as to those proceedings related to removal of any tenant solely because the tenant has held over or exceeded the term of a lease; and

**WHEREAS,** the unnecessary movement and/or displacement of individuals residing in Pennsylvania from their homes or residences during the current stage of the disaster emergency continues to constitute a public health danger to the Commonwealth in the form of unnecessary movement that increases the risk of community spread of COVID-19; and

**WHEREAS,** certain filings, charges and acts relating to the dispossession of property remain subject to temporary restraints on account of other directives, including provisions of the federal Coronavirus Aid, Relief and Economic Security Act (CARES Act, P.L. 116-136; see also 15 U.S.C. § 9058), or Orders issued by local courts extending court closures and other moratoriums on proceedings such as:

- **On June 18, 2020, the U.S. Department of Veterans Affairs (VA) in Circular 26-20-23 (dated June 17, 2020) extended the foreclosure moratorium for properties secured by VA guaranteed loans from June 30, 2020 to August 31, 2020;**
- **The Federal Housing Finance Agency (FHFA) announced that Fannie Mae and Freddie Mac will extend their single-family moratorium on foreclosures and evictions until at least August 31, 2020;**
- **On June 17, 2020, the U.S. Department of Housing and Urban Development (HUD) extended the foreclosure and eviction moratorium for Federal Housing Authority (FHA) insured single-family loans until August 31, 2020;**

- *The U.S. Department of Agriculture (USDA) extended the foreclosure and eviction moratorium for all Single Family Housing Direct Home Loans until August 31, 2020;*
- *Orders issued by local courts (e.g., Order No. 46 of 2020 of the First Judicial District of Pennsylvania, President Judge Administrative Order, In re: Appeals to Common Pleas from Municipal Court Judgements of Possession of Real Property Pursuant to a Lease which directs that* "*appeals from Municipal Court judgments of possession of real property pursuant to a lease filed before March 16, 2020, due to the limitations of in-person filings, the deposit of rent required by Philadelphia Civil Rule \*1008 in order to maintain the supersedeas pending disposition of the appeal" is stayed until September 8, 2020, or until further Order of the Court.");* and

*WHEREAS, the Federal Coronavirus Aid, Relief and Economic Security (CARES) Act, passed in March, provided $3.9 billion for Pennsylvania and is intended to help people hurt economically during the pandemic. In late May, the General Assembly passed Act 24 of 2020 and directed $175 million of these CARES dollars to the Pennsylvania Housing Finance Agency (PHFA) to provide assistance for struggling renters and homeowners. The portion for rent assistance is at least $150 million, and $25 million was set aside for mortgage assistance. PHFA developed programs for distributing this financial assistance to people in need and began accepting completed applications for both rental and mortgage assistance on July 6; and*

*WHEREAS, the CARES Act and other existing federal laws and rules involving consumer protections related to single-family mortgages and certain multifamily dwellings have been modified or extended for various additional periods in a piecemeal fashion and have created confusion and uncertainty for the residents of the Commonwealth as to who has eviction and foreclosure protections related to COVID-19 remediation; and*

*WHEREAS, Pennsylvania law, including the Loan Interest and Protection Law, 41 P.S. §101 et. seq. (Act 6) and the Homeowners Emergency Assistance Act, 35 P.S. § 1680.41 et. seq. (Act 91), requires that notice be provided to debtors for each and every foreclosure action that is initiated; and*

*WHEREAS, the Landlord and Tenant Act of 1951, 68 P.S. §250.101 et. seq., and the Manufactured Home Community Rights Act, 68 P.S. §398.1 et. seq., require that notice be provided to tenants and/or lessees when a landlord or manufactured home community owner intends to evict the tenant and/or lessee for nonpayment of rent; and*

*WHEREAS, the displacement of individuals residing in Pennsylvania from their homes or residences during the current stage of the disaster emergency constitutes a public health danger to the Commonwealth; and*

*WHEREAS, the Commonwealth has sought to support the housing market and provide funding to landlords and tenants impacted by the COVID emergency with the enactment of Act 24 of 2020 (Act 24), but the disbursement of those funds will take some time and a stay of foreclosures and evictions will help stabilize and protect individuals until those funds can be utilized; and*

*WHEREAS, there is a need to provide limited protections from dispossession of property to those individuals who are eligible for and awaiting assistance under Act 24; and*

*WHEREAS, Pennsylvania has seen a recent uptick of positive COVID-19 cases in the Commonwealth and many other states have experienced a much greater resurgence of COVID-19 during their respective reopening processes; and*

*WHEREAS, the Commonwealth must continue to implement measures to mitigate the risk of community-spread of COVID-19 including implementing measures to prevent unnecessary movement and/or displacement of individuals residing in Pennsylvania; and*

*WHEREAS, as of July 8, 2020, the Commonwealth of Pennsylvania has 92,148 persons who have tested positive or meet the requirements as probable cases for COVID-19 in all sixty-seven counties and reports 6,812 deaths from the virus;*

*NOW THEREFORE, pursuant to the authority vested in me and my Administration by the laws of the Commonwealth of Pennsylvania, I do hereby ORDER and PROCLAIM as follows:*

*Section 1: Notice Requirements of Act 6 and 91 Suspended*

*Commencing on July 10, 2020, the notice requirements mandated by Act 6 and Act 91 are stayed until August 31, 2020, thereby tolling the ability to commence the timelines and necessary Act 6 and Act 91 compliance that must be satisfied prior to the initiation of foreclosure actions. All foreclosures*

*requiring compliance with Act 6 and Act 91 cannot commence until August 31, 2020.  All foreclosure timelines must be computed with a start date of August 31, 2020, at which point any previously delivered Act 6 and Act 91 notices will be deemed delivered and any foreclosure process may commence.  The foreclosure actions requiring Act 6 and 91 compliance may proceed from that point forward in the normal course of action.*

   *Section 2:  Notice Requirements of the Landlord and Tenant Act and other Acts Suspended*

   *Commencing on July 10, the notice requirements mandated by the Landlord and Tenant Act of 1951 and the Manufactured Home Community Rights Act are stayed until August 31, 2020, thereby tolling the ability to commence the timelines necessary for the initiation of residential eviction proceedings. All residential eviction proceedings requiring compliance with the Landlord and Tenant Act of 1951 and the Manufactured Home Community Rights Act cannot commence until August 31, 2020. All eviction timelines must be computed with a start date of August 31, 2020, at which point any previously delivered Landlord and Tenant Act of 1951 and Manufactured Home Community Rights Act notices will be deemed delivered and any eviction proceedings may commence. The eviction proceedings requiring compliance with the Landlord and Tenant Act of 1951 and the Manufactured Home Community Rights Act may proceed from that point forward in the normal course of action.*

*Section 3: Effective Date and Duration*

   *This order is effective immediately and will remain in effect until August 31, 2020.*

*Section 4:  Scope of Order*

   *The provisions of this Order and the suspension of the Acts under this Order apply only to matters involving the nonpayment of monies as well as to those proceedings related to removal of any tenant solely because the tenant has held over or exceeded the term of a lease.  The Order does not apply to suspend notice requirements relating to evictions for breaches of any other covenants.*

   *This Order does not treat nonpayment of monies during this period as forgiven and individuals are still responsible for any rent or monies owed under the terms of the mortgage or lease agreement.*

   *Further, the provisions of this Order do not apply to: the federally-backed loans for which the moratorium on foreclosures and evictions has been extended until August 31, 2020, by the VA, USDA, FHA, and FHFA, as stated above; to individuals who are situated in counties where the Courts are closed or have issued orders staying evictions or foreclosures through or after August 31, 2020; or to lenders or property owners who have agreed to participate in CARES Act relief available through Act 24 of 2020 administered by the PHFA as described above.*

   *This Order suspends eviction and foreclosure notice periods for homeowners and renters when the respective lender   or   property   owner has not agreed   to   participate   in   the CARES   Act relief available through Act 24 of 2020 administered by the PHFA as described above by August 31, 2020.*



*GIVEN under my hand and the Seal of the Governor, at the city of Harrisburg, on this ninth day of July two thousand twenty, the year of the commonwealth the two hundred and forty-fifth.*

**TOM WOLF**
**Governor**

# Exhibit D



# City of Philadelphia

City Council
Chief Clerk's Office
402 City Hall
Philadelphia, PA  19107

**BILL NO. 200295**
**(As Amended, 6/5/20)**

_____

**Introduced May 1, 2020**

_____

**Councilmembers Gym, Brooks, Gauthier, Henon, Jones, Quiñones Sánchez and Thomas**

_____

**Referred to the**
**Committee on Housing, Neighborhood Development and The Homeless**

_____

## AN ORDINANCE

Amending various sections of The Philadelphia Code to address matters related to the landlord and tenant relationship during the novel coronavirus of 2019 pandemic, and otherwise, including providing for temporary eviction relief, and making certain technical changes, all under certain terms and conditions.

_THE COUNCIL OF THE CITY OF PHILADELPHIA HEREBY ORDAINS:_

SECTION 1.

The Council of the City of Philadelphia hereby makes the following legislative findings:

1. On March 6, 2020, in response to the 2019 novel coronavirus disease, COVID-19, the Governor of Pennsylvania issued a Proclamation of Disaster Emergency.

2. On March 11, 2020, the World Health Organization ("WHO") declared the COVID-19 outbreak a global pandemic, defined as the worldwide spread of a new virus for which most people do not have immunity.

3. On March 19, 2020, the Governor of Pennsylvania and Pennsylvania Secretary of Health ordered all non-life-sustaining businesses in Philadelphia and the surrounding counties to close their physical locations to slow the spread of COVID-19.

4. On March 22, 2020, the Mayor and the Commissioner of Public Health jointly issued their second Emergency Order Temporarily Prohibiting Operation of Non-Essential Businesses and Congregation of Persons to Prevent the Spread COVID-19, which remains in effect.

# City of Philadelphia

*BILL NO. 200295, as amended continued*

5. On March 23, 2020, the Governor of Pennsylvania issued a Stay at Home Order that applies to Philadelphia and numerous surrounding counties.

6. The local and state orders shut down or reduced the operations of many businesses in Philadelphia. 99.7% of Greater Philadelphia's economy consists of small businesses.

7. On March 16, 2020, the Supreme Court of Pennsylvania issued Orders to prevent the Judiciary from effectuating an eviction, ejectment or other displacement from a residence. The Supreme Court extended these Orders on April 28, 2020. On May 7, 2020, Governor Wolf signed an executive order staying foreclosure and eviction notice requirements for 60 days, thereby tolling the ability to commence the timelines necessary for the initiation of foreclosure and eviction proceedings until July 10, 2020. On May 21, 2020, Governor Wolf amended the May 7, 2020 executive order to apply the revised notice provisions only to matters involving the nonpayment of monies and proceedings related to removal of any tenant solely because the tenant has held over or exceeded the term of a lease.

8. The City of Philadelphia is one of the most densely populated cities in the United States of America with an estimated population size of 1.5 million.

9. Philadelphia is also one of the poorest cities in America, where 24.5% or 377,116 Philadelphia residents, live in poverty.

10. Philadelphia has a high population of renters. The number of renters in Philadelphia has rapidly increased in recent years, growing from 40.7% in 2000 to almost half of the population today.

11. Before the pandemic, Philadelphia had the 4th highest eviction rate among large cities, with 1 out of every 14 renters facing eviction each year.

12. More than 300,000 of Philadelphia's renters struggled to afford rent before the COVID-19 pandemic. In 2017, 53.4% of Philadelphia renters were cost-burdened, meaning they pay more than 30% of their income on rent, and 31% of Philadelphia renters were severely cost-burdened, meaning they spent more than 50% of their income on rent.

13. To address the city's affordable housing crisis, Philadelphia City Council established a Tenant Legal Defense Fund in 2017, an anti-eviction task force in 2017, and right to counsel in 2019 to address evictions.

14. The number of Philadelphians struggling to pay rent has undoubtedly increased since the onset of the COVID-19 pandemic, as at least 1.9 million Pennsylvanians and over 120,000 Philadelphians have filed for unemployment since March 2020, exacerbating already-existing financial burdens.

# City of Philadelphia

*BILL NO. 200295, as amended continued*

15. When the judicial emergency is lifted, there is an estimated backlog of 5,000 eviction cases in Philadelphia Municipal Court.

16. The average annual cost for the City of Philadelphia to provide shelter to a family of four is $58,000.

17. According to current projections from the Mayor's Office, as a result of the COVID-19 pandemic, the estimated revenue losses, federal reimbursements, and expense increases indicate that the City's Fiscal Year 2021 budget must include $649 million of reductions to planned spending, reduced reserves and new revenue sources compared to the original Fiscal Year 2021 budget, proposed on March 5th, 2020, to close the budget gap.

18. The Mayor's revised Fiscal Year 2021 budget, submitted to Council on May 1, 2020, included steep cuts to many affordable housing programs and initiatives that serve the City's most vulnerable populations, including reductions in funding for the preservation and construction of affordable housing units, rental assistance programs, low-income home repair programs, the Philly First Home program and the Philadelphia Eviction Prevention Project.

19. In May 2020, the City of Philadelphia used approximately $10 million in federal funds to create PHL Rent Assist, a rental assistance program that aimed to provide rental assistance to 3,000-4,000 families. Approximately 13,000 Philadelphians--four to five times the number of families that could be funded--applied for this program.

20. The COVID-19 pandemic's negative impact on the lives and incomes of Philadelphians, and City revenues, has exacerbated the pre-existing housing crisis and created a housing emergency in the City of Philadelphia. The measures identified below are necessary to ensure residents are able to remain in their homes, and small businesses are able to stay in business.

SECTION 2.  Title 9 of The Philadelphia Code is hereby amended to read as follows:

TITLE 9. REGULATION OF BUSINESSES, TRADES AND PROFESSIONS

*             *             *

CHAPTER 9-800. LANDLORD AND TENANT

§ 9-802.  Definitions.

*    *    *

(5)   Unfair Rental Practice. Any act in violation of [§ 9-804.] §§ 9-804 or 9-809.

# City of Philadelphia

*BILL NO. 200295, as amended continued*

\*     \*     \*

*§ 9-809.  COVID-19 Emergency Housing Protections.*

*(1)         Definitions. The following definitions apply to this Section 9-809 only:*

*(a)         Certification of Hardship. A signed written statement, which may be signed by use of a typed electronic signature and provided electronically or may be provided in hard copy, that is subject to the provisions of Section 1-108 of the Code (Certification), and is submitted by an individual with personal knowledge of the facts set forth therein stating, at minimum, as follows, provided that any initial statements may be further supplemented with additional explanation, facts, or support at any time:*

*(i) In the case of a residential tenant, that a residential tenant has lost income due to the pandemic and setting forth facts that provide an explanation of the COVID-19 financial hardship suffered.*

*(ii) In the case of a commercial tenant, that a small business has suffered a small business financial hardship and setting forth facts supporting such financial hardship.*

*(b)         COVID-19 emergency period.  The period beginning on the date the ordinance adding Section 9-809 to the Code becomes law and ending August 31, 2020.*

*(c)         COVID-19 financial hardship.  A tenant's or tenant's household member's loss of income due to any one or more of the following during the COVID-19 emergency period or the retroactive emergency period:*

*(i)         A diagnosis of the disease caused by the 2019 novel Coronavirus, known as COVID-19.*

*(ii)         The need to quarantine or self-quarantine due to the advice of a  health care provider; due to symptoms of COVID-19, such as fever, dry cough, or shortness of breath; after the return of an individual to the United States after travel to a Tier 2 or Tier 3 country as defined by the United States Center for Disease Control ("CDC") with respect to COVID-19; or as the result of having come into contact with an individual who has been diagnosed with COVID-19.*

*(iii)         The need to care for a family member or a member of the tenant's household as the result of such family or household member's diagnosis of COVID-19 or self-quarantine for purposes described subparagraph 9-809(1)(c)(ii).*

# City of Philadelphia

*BILL NO. 200295, as amended continued*

      *(iv)       The need to care for a family member of a member of the tenant's household as the result of the closure of a school, daycare, adult care facility, or other care facility where care would otherwise be provided for such family or household member.*

      *(v)       The inability to work as the result of a requirement by the Governor, the Secretary of Health of the Commonwealth of Pennsylvania, the Mayor, or the Health Commissioner that businesses, or a particular type of business, must remain closed.*

      *(vi)       The inability to work as the result of such tenant or such tenant's household member being at a greater risk of harm than the general population if such person or such person's household member contracts COVID-19, such as those with compromised immune systems, the elderly, or those who have self-quarantined as the result of the recommendation of a health care professional, the CDC, the Governor, the Secretary of Health of the Commonwealth of Pennsylvania, the Mayor, or the Health Commissioner.*

      *(vii)       The inability to work as a result of a requirement by the Governor, the Secretary of Health of the Commonwealth of Pennsylvania, the Mayor, or the Health Commissioner that residents of certain areas of the Commonwealth must not travel, and such travel would be necessary to report to work.*

      *(viii)       The loss of a job, the reduction of work hours offered to such tenant or such tenant's household member, or a reduction in the salary or hourly wage paid to such tenant or such tenant's household member, whether permanent or temporary.*

      *(ix)       The inability to commence or obtain employment.*

      *(x)       The need to financially support a family member due to the family member or a household member of such family member's loss of income for any one or more of the reasons set forth in this paragraph 9-809(1)(c).*

*.*

      *(d)       Landlord.  An owner of a rental premises and any agent, or other person, operating or managing a rental premise on behalf of an owner.*

      *(e)       Retroactive emergency period.  The period beginning March 1, 2020 and continuing through the effective date of the ordinance adding this Section 9-809 to the Code.*

      *(f)       Small business. A person that employs fewer than 100 total employees, wherever located, whether within the City of Philadelphia or elsewhere.*

      *(g)       Small business financial hardship.  A small business's documented loss of income due to one or more of the following during the COVID-19 emergency period or the retroactive emergency period:*

      *(i)       A requirement or recommendation by the Governor,*

# City of Philadelphia

*the Secretary of Health of the Commonwealth of Pennsylvania, the Mayor, or the Health Commissioner that businesses in a particular area, or a particular type of business, remain fully or partially closed.*

*(ii)        The owner or operator, a key employee, or a significant number of employees of the small business being unable to work as a result of the circumstances set forth in subparagraphs 9-809(1)(c)(i), (ii), (iii), (iv), (vi), or (vii).*

*(iii)        The loss of customers or reduction of business from customers as a result of the COVID-19 pandemic, or related recommendations or requirements of the Governor, the Secretary of Health of the Commonwealth of Pennsylvania, the Mayor, or the Health Commissioner.*

*(2)        Purpose. This Section 9-809 shall apply in addition to any other provisions in this Chapter 9-800, or any provisions of a lease entered into between a tenant and landlord. If the provisions of this Section 9-809 conflict with any other provisions of Chapter 9-800 or the provisions of any lease that otherwise governs a landlord tenant relationship, the provisions of this Section 9-809 shall control.*

*(\*)  Residential Eviction Relief. During the COVID-19 emergency period the only legal basis for evicting a residential tenant in Philadelphia shall be to cease or prevent an imminent threat of harm by the person being evicted, including physical harm or harassment, and it shall be unlawful for a landlord to take any steps in furtherance of recovering possession of a residential premises rented by a tenant on any other basis.*

*(\*)  Commercial Eviction Relief. If any person has provided the landlord with a certification of hardship, during the COVID-19 emergency period the only legal basis for evicting a small business that is a commercial tenant in Philadelphia shall be to cease or prevent an imminent threat of harm by the person being evicted, including physical harm or harassment, and it shall be unlawful for a landlord to take any steps in furtherance of recovering possession of a commercial premises rented by such small business on any other basis.*

*(\*)  Defenses. The failure of the landlord to comply with any obligation under this Section 9-809 may be asserted as a defense by a tenant in an action before any adjudicatory body and may not be waived.*

*(\*)  Severability. If any provision of this Section 9-809 or application thereof to any persons or circumstances is judged invalid by a court of competent jurisdiction, the invalidity shall not affect other provisions or applications of the Ordinance that can be given effect without the invalidated provision or application and to this end the provisions of the ordinance are declared severable.*

*                    \*            \*            \**

SECTION 3.  This ordinance shall be effective immediately.

# Exhibit E



# City of Philadelphia

City Council
Chief Clerk's Office
402 City Hall
Philadelphia, PA 19107

**BILL NO. 200305
(As Amended, 6/5/20)**

---

**Introduced May 1, 2020**

---

**Councilmembers Gauthier, Gym, Brooks, Thomas, Jones and Quiñones Sánchez**

---

**Referred to the
Committee on Housing, Neighborhood Development and The Homeless**

---

**AN ORDINANCE**

Amending various sections of The Philadelphia Code to address matters related to the landlord and tenant relationship during the novel coronavirus of 2019 pandemic and otherwise, including providing for payment agreements for tenants with a certified financial hardship related to COVID-19, and making certain technical changes, all under certain terms and conditions.

*THE COUNCIL OF THE CITY OF PHILADELPHIA HEREBY ORDAINS:*

SECTION 1.

    The Council of the City of Philadelphia hereby makes the following legislative findings:

1. On March 6, 2020, in response to the 2019 novel coronavirus disease, COVID-19, the Governor of Pennsylvania issued a Proclamation of Disaster Emergency.

2. On March 11, 2020, the World Health Organization ("WHO") declared the COVID-19 outbreak a global pandemic, defined as the worldwide spread of a new virus for which most people do not have immunity.

3. On March 19, 2020, the Governor of Pennsylvania and Pennsylvania Secretary of Health ordered all non-life-sustaining businesses in Philadelphia and the surrounding counties to close their physical locations to slow the spread of COVID-19.

4. On March 22, 2020, the Mayor and the Commissioner of Public Health jointly issued their second Emergency Order Temporarily Prohibiting Operation of Non-Essential Businesses and Congregation of Persons to Prevent the Spread COVID-19, which remains in effect.

# City of Philadelphia

5.  On March 23, 2020, the Governor of Pennsylvania issued a Stay at Home Order that applies to Philadelphia and numerous surrounding counties.

6.  The local and state orders shut down or reduced the operations of many businesses in Philadelphia. 99.7% of Greater Philadelphia's economy consists of small businesses.

7.  On March 16, 2020, the Supreme Court of Pennsylvania issued Orders to prevent the Judiciary from effectuating an eviction, ejectment or other displacement from a residence. The Supreme Court extended these Orders on April 28, 2020. On May 7, 2020, Governor Wolf signed an executive order staying foreclosure and eviction notice requirements for 60 days, thereby tolling the ability to commence the timelines necessary for the initiation of foreclosure and eviction proceedings until July 10, 2020. On May 21, 2020, Governor Wolf amended the May 7, 2020 executive order to apply the revised notice provisions only to matters involving the nonpayment of monies and proceedings related to removal of any tenant solely because the tenant has held over or exceeded the term of a lease.

8.  The City of Philadelphia is one of the most densely populated cities in the United States of America with an estimated population size of 1.5 million.

9.  Philadelphia is also one of the poorest cities in America, where 24.5% or 377,116 Philadelphia residents, live in poverty.

10. Philadelphia has a high population of renters. The number of renters in Philadelphia has rapidly increased in recent years, growing from 40.7% in 2000 to almost half of the population today.

11. Before the pandemic, Philadelphia had the 4th highest eviction rate among large cities, with 1 out of every 14 renters facing eviction each year.

12. More than 300,000 of Philadelphia's renters struggled to afford rent before the COVID-19 pandemic. In 2017, 53.4% of Philadelphia renters were cost-burdened, meaning they paid more than 30% of their income on rent, and 31% of Philadelphia renters were severely cost-burdened, meaning they spent more than 50% of their income on rent.

13. To address the city's affordable housing crisis, Philadelphia City Council established a Tenant Legal Defense Fund in 2017, an anti-eviction task force in 2017, and right to counsel in 2019 to address evictions.

14. The number of Philadelphians struggling to pay rent has undoubtedly increased since the onset of the COVID-19 pandemic, as at least 1.9 million Pennsylvanians and over 120,000 Philadelphians have filed for unemployment since March 2020, exacerbating already-existing financial burdens.

# City of Philadelphia

*BILL NO. 200305, as amended continued*

15. When the judicial emergency is lifted, there is an estimated backlog of 5,000 eviction cases in Philadelphia Municipal Court.

16. The average annual cost for the City of Philadelphia to provide shelter to a family of four is $58,000.

17. According to current projections from the Mayor's Office, as a result of the COVID-19 pandemic, the estimated revenue losses, federal reimbursements, and expense increases indicate that the City's Fiscal Year 2021 budget must include $649 million of reductions to planned spending, reduced reserves and new revenue sources compared to the original Fiscal Year 2021 budget, proposed on March 5th, 2020, to close the budget gap.

18. The Mayor's revised Fiscal Year 2021 budget, submitted to Council on May 1, 2020, included steep cuts to many affordable housing programs and initiatives that serve the City's most vulnerable populations, including reductions in funding for the preservation and construction of affordable housing units, rental assistance programs, low-income home repair programs, the Philly First Home program and the Philadelphia Eviction Prevention Project.

19. In May 2020, the City of Philadelphia used approximately $10 million in federal funds to create PHL Rent Assist, a rental assistance program that aimed to provide rental assistance to 3,000-4,000 families. Approximately 13,000 Philadelphians--three to four times the number of families that could be funded--applied for this program.

20. The COVID-19 pandemic's negative impact on the lives and incomes of Philadelphians, and City revenues, has exacerbated the pre-existing housing crisis and created a housing emergency in the City of Philadelphia. The measures identified below are necessary to ensure residents are able to remain in their homes, and small businesses are able to stay in business.

SECTION 2.  Title 9 of The Philadelphia Code is hereby amended to read as follows:

TITLE 9. REGULATION OF BUSINESSES, TRADES AND PROFESSIONS

\*          \*          \*

CHAPTER 9-800. LANDLORD AND TENANT

§ 9-802.  Definitions.

\*          \*          \*

(5)   Unfair Rental Practice. Any act in violation of [§ 9-804.] *§§ 9-804 or 9-809*.

# City of Philadelphia

*BILL NO. 200305, as amended continued*

*         *         *

*§ 9-809.  COVID-19 Emergency Housing Protections.*

*(1)        Definitions. The following definitions apply to this Section 9-809 only:*

*(a)        Certification of Hardship. A signed written statement, which may be signed by use of a typed electronic signature and provided electronically or may be provided in hard copy, that is subject to the provisions of Section 1-108 of the Code (Certification), and is submitted by an individual with personal knowledge of the facts set forth therein stating, at minimum, as follows, provided that any initial statements may be further supplemented with additional explanation, facts, or support at any time:*

*(i) In the case of a residential tenant, that a residential tenant has lost income due to the  pandemic and setting forth facts that provide an explanation of the COVID-19 financial hardship suffered.*

*(ii) In the case of a commercial tenant, that a small business has suffered a small business financial hardship and setting forth facts supporting such financial hardship.*

*(b)        COVID-19 emergency period.  The period beginning on the date the ordinance adding Section 9-809 to the Code becomes law and ending August 31, 2020.*

*(c)        COVID-19 financial hardship.  A tenant's or tenant's household member's loss of income due to any one or more of the following during the COVID-19 emergency period or the retroactive emergency period:*

*(i)        A diagnosis of the disease caused by the 2019 novel Coronavirus, known as COVID-19.*

*(ii)        The need to quarantine or self-quarantine due to the advice of a health care provider; due to symptoms of COVID-19, such as fever, dry cough, or shortness of breath; after the return of an individual to the United States after travel to a Tier 2 or Tier 3 country as defined by the United States Center for Disease Control ("CDC") with respect to COVID-19; or as the result of having come into contact with an individual who has been diagnosed with COVID-19.*

*(iii)        The need to care for a family member or a member of the tenant's household as the result of such family or household member's diagnosis of COVID-19 or self-quarantine for purposes described in subparagraph 9-809(1)(c)(ii).*

# City of Philadelphia

*BILL NO. 200305, as amended continued*

   (iv)   The need to care for a family member of a member of the tenant's household as the result of the closure of a school, daycare, adult care facility, or other care facility where care would otherwise be provided for such family or household member.

   (v)   The inability to work as the result of a requirement by the Governor, the Secretary of Health of the Commonwealth of Pennsylvania, the Mayor, or the Health Commissioner that businesses, or a particular type of business, must remain closed.

   (vi)   The inability to work as the result of such tenant or such tenant's household member being at a greater risk of harm than the general population if such person or such person's household member contracts COVID-19, such as those with compromised immune systems, the elderly, or those who have self-quarantined as the result of the recommendation of a health care professional, the CDC, the Governor, the Secretary of Health of the Commonwealth of Pennsylvania, the Mayor, or the Health Commissioner.

   (vii)   The inability to work as a result of a requirement by the Governor, the Secretary of Health of the Commonwealth of Pennsylvania, the Mayor, or the Health Commissioner that residents of certain areas of the Commonwealth must not travel, and such travel would be necessary to report to work.

   (viii)   The loss of a job, the reduction of work hours offered to such tenant or such tenant's household member, or a reduction in the salary or hourly wage paid to such tenant or such tenant's household member, whether permanent or temporary.

   (ix)   The inability to commence or obtain employment.

   (x)   The need to financially support a family member due to the family member or a household member of such family member's loss of income for any one or more of the reasons set forth in this paragraph 9-809(1)(c).
.

   (d)   Landlord.  An owner of a rental premises and any agent, or other person, operating or managing a rental premise on behalf of an owner.

   (e)   Retroactive emergency period.  The period beginning March 1, 2020 and continuing through the effective date of the ordinance adding this Section 9-809 to the Code.

   (f)   Small business. A person that employs fewer than 100 total employees, wherever located, whether within the City of Philadelphia or elsewhere.

   (g)   Small business financial hardship.  A small business's documented loss of income due to one or more of the following during the COVID-19 emergency period or the retroactive emergency period:

   (i)   A requirement or recommendation by the Governor, the Secretary of

# City of Philadelphia

*Health of the Commonwealth of Pennsylvania, the Mayor, or the Health Commissioner that businesses in a particular area, or a particular type of business, remain fully or partially closed.*

   *(ii)  The owner or operator, a key employee, or a significant number of employees of the small business being unable to work as a result of the circumstances set forth in subparagraphs 9-809(1)(c)(i), (ii), (iii), (iv), (vi), or (vii).*

   *(iii)  The loss of customers or reduction of business from customers as a result of the COVID-19 pandemic, or related recommendations or requirements of the Governor, the Secretary of Health of the Commonwealth of Pennsylvania, the Mayor, or the Health Commissioner.*

*(2)  Purpose.  This Section 9-809 shall apply in addition to any other provisions in this Chapter 9-800, or any provisions of a lease entered into between a tenant and landlord.  If the provisions of this Section 9-809 conflict with any other provisions of Chapter 9-800 or the provisions of any lease that otherwise governs a landlord tenant relationship, the provisions of this Section 9-809 shall control.*

*(\*)  Mandatory Hardship Repayment Agreement for Residential Tenants with a Certified Financial Hardship as the Result of the COVID-19 Pandemic.*

  *(a)  Financial Hardship.  Except as provided in paragraph (g) below, any residential tenant that has suffered a COVID-19 financial hardship during the retroactive emergency period or the COVID-19 emergency period, and has failed to pay rent as normally due at any point prior to the end of the COVID-19 emergency period shall have the right to enter into a hardship repayment agreement as set forth in subparagraphs (b)(i) through (iii), below, without incurring any penalty.  Such tenant shall be considered in full compliance with any payment obligations under such tenant's lease, and any associated payment agreements, provided such tenant provides such tenant's landlord the following and thereafter enters into a hardship repayment agreement:*

   *(i)  A certification of hardship; and*

   *(ii)  Documentary evidence of the loss of income or increases in expenses the tenant has incurred during the retroactive emergency period or the COVID-19 emergency period as a result of such tenant's COVID-19 financial hardship, or if such documentation cannot be reasonably provided, a further certification explaining why such documentation is not available which may be signed by use of a typed electronic signature and provided electronically or may be provided in hard copy, that is subject to the provisions of Section 1-108 of the Code (Certification).*

  *(b)  Hardship Repayment Agreement.  Any landlord whose residential tenant qualifies for a hardship repayment agreement pursuant to paragraph (a), "Financial Hardship," shall enter*

# City of Philadelphia

*BILL NO. 200305, as amended continued*

*into a repayment agreement with such tenant to pay past due rent pursuant to the following terms:*

*(i) The tenant shall pay the full amount of past due rent to the landlord within nine (9) months after the last day of the COVID-19 emergency period.*

*(ii) Beginning the first day of the month following the COVID-19 emergency period, and every month thereafter, the tenant shall pay:*

*(.1) The full monthly rate of rent as normally due; plus*

*(.2) At a minimum, the lesser of the following: thirty percent (30%) of the full monthly rate of rent due during the COVID-19 emergency period, or the total amount of past due rent divided by nine (9).*

*(iii) No late fees or other charges related to past due rent may be charged during the retroactive emergency period, the COVID-19 emergency period, and the nine (9) months thereafter.*

*(iv) If the tenant does not renew or extend the term of the lease, at the end of the term of the lease, the landlord may apply any security deposit towards any past rent due.*

*(c)  Prohibition on Hardship Repayment Agreements Reduced to Judgment.  It shall be unlawful for a landlord to require or request a residential tenant who has suffered a COVID-19 financial hardship to memorialize a hardship repayment agreement entered into pursuant to subparagraph (b), "Hardship Repayment Agreement," in a judgment by agreement, consent order, a consent judgment, or similar court order.*

*(d)  Notice Required and Limitation on Eviction for Nonpayment of Past Due Rent.  In addition to any other limitations set forth under this Section 9-809, until nine (9) months after the last day of the COVID-19 emergency period the nonpayment of rent shall not be a legal basis to evict a tenant unless the following conditions are met:*

*(i) With respect to a tenant that has not entered into a hardship repayment agreement or requested to enter into a hardship repayment agreement, the landlord has provided the tenant written notice regarding the tenant's rights under this subsection, "Mandatory Hardship Repayment Agreement for Tenants with a Certified Financial Hardship as the Result of the COVID-19 Pandemic,"as provided under subsection, "Notice, Forms, and Regulations" of this section 9-809 at least thirty (30) days prior to the date a landlord takes any such action and, if applicable,*

*(ii) With respect to a tenant who has the right to enter into a hardship*

# City of Philadelphia

*BILL NO. 200305, as amended continued*

*repayment agreement and has requested to enter into such an agreement at any point prior to the end of the thirty (30) day notice period in subparagraph (d)(i), above, but has not yet entered such an agreement, the eviction action is based on a failure to pay the ongoing monthly rate of rent as it is normally due after the end of the COVID-19 emergency period.*

>        *(iii) With respect to a tenant who has entered into a hardship repayment agreement, the eviction action is either (.1) based on a failure to pay the ongoing monthly rate of rent as it is normally due after the end of the COVID-19 emergency period; or (.2) the tenant is in arrears in an amount equal to four or more monthly payments required under clause (b)(ii)(.2) of paragraph (b), "Hardship Repayment Agreement."*

>    *(e)  In addition to any other limitations set forth under this Section 9-809, the Code, or any other applicable law, until nine (9) months after the last day of the COVID-19 emergency period it shall be unlawful for a landlord to take any steps in furtherance of recovering possession of a residential premises occupied by a tenant or a guest of a tenant, on any basis other than a legal basis for eviction.  For the purposes of this paragraph, sending a notice required under this Section 9-809 or participating in an eviction diversion or mediation program established by the City shall not be considered taking steps in furtherance of recovering possession of a residential premises.*

>    *(f)      Forms.  The Commission, or such other City department or office as the Mayor may designate, is authorized to create a form to be used by landlords and tenants entering into a hardship repayment agreement as provided for under paragraph (a) of this subsection and a form for notice under paragraph (c) of this subsection.*

>    *(g)   This subsection "Mandatory Hardship Repayment Agreement for Residential Tenants with a Certified Financial Hardship as the Result of the COVID-19 Pandemic," shall not apply if one or more of the following conditions are applicable to the residential tenant, or the residential premises occupied:*

>        *(i)      The tenant receives a federal housing subsidy pursuant to 42 U.S.C. § 1437f that is not a tenant-based subsidy; or*

>        *(ii)      The tenant receives a federal housing subsidy administered by the U.S. Department of Housing and Urban Development; or*

>        *(iii)      A loan financing the residential premises is insured or assisted under 12 U.S.C. § 1701q, § 1715l(d)(3), or § 1715z-1; or 42 U.S.C. § 1485.*

*(\*) Notice, Forms, and Regulations.*

>    *(a)   Required Notice.      Any notice that a landlord is required to provide a tenant under this Section 9-809 shall be provided in writing, by hand delivery or certified United States mail with proof of mailing, and must provide notice of the tenant's rights under this Section 9-*

# City of Philadelphia

*BILL NO. 200305, as amended continued*

809 as well as clear information on how the tenant may exercise such rights, including the following specific text or such other language that may be included in a form created by the City pursuant to paragraph (b), "Forms and Regulations," (below):

> *YOU MAY BE ELIGIBLE FOR CERTAIN HOUSING PROTECTIONS. IF YOU HAVE EXPERIENCED A FINANCIAL HARDSHIP DUE TO COVID-19 THIS MAY INCLUDE, BUT IS NOT LIMITED TO, A NINE (9) MONTH REPAYMENT PLAN TO PAY PAST DUE RENT. YOU MUST PROVIDE YOUR LANDLORD A CERTIFICATION OF HARDSHIP TO QUALIFY FOR SOME OF THESE PROTECTIONS.*

(b)   *Forms and Regulations. The Commission, or such other City department or office as the Mayor may designate, is authorized to issue regulations implementing this Section 9-809, and to create forms to be used by landlords and tenants under this Section 9-809 including but not limited to, a certification of hardship form, a hardship repayment agreement form, and a form of required notice.*

(*)  *Defenses.  The failure of the landlord to comply with any obligation under this Section 9-809 may be asserted as a defense by a tenant in an action before any adjudicatory body and may not be waived.*

(*)  *Severability.  If any provision of this Section 9-809 or application thereof to any persons or circumstances is judged invalid by a court of competent jurisdiction, the invalidity shall not affect other provisions or applications of the Ordinance that can be given effect without the invalidated provision or application and to this end the provisions of the ordinance are declared severable.*

*         *         *

SECTION 3. This ordinance shall be effective immediately, with the exception of any provisions applicable during the retroactive emergency period, as defined in Section 2 which shall be effective as of March 1, 2020.

# City of Philadelphia

*BILL NO. 200305, as amended continued*

# Exhibit F

**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**
**PHILADELPHIA MUNICIPAL COURT**

**President Judge Administrative Order**

**No. 48 of 2020**

<u>**In re: Reopening of Philadelphia Municipal Court Civil Division**</u>
<u>**to In-Person Proceedings**</u>

<u>**ORDER**</u>

AND NOW, this 13th day of July, 2020, pursuant to Pa.R.J.A. No 1952 (B)(2), the Judicial Emergency declared by the First Judicial District, and upon consideration of Governor Wolf's July 9, 2020 Order regarding Staying Notice Requirements for Specified Actions Related to the Dispossession of Property, **it is hereby ORDERED and DECREED** that the reopening of the Philadelphia Municipal Court Civil Division to in-person proceedings shall be implemented in phases as follows:

(1)  The Court will hear in-person small claims court matters, limiting the number of cases scheduled each day.

(2)  Landlord-Tenant trials and petitions currently scheduled to be heard by the Philadelphia Municipal Court from July 6, 2020 to September 2, 2020 are postponed.  They will be rescheduled beginning on or after September 3, 2020

(3)  Landlord-Tenant complaints may be filed with the Philadelphia Municipal Court electronically and in-person (an appointment should be made with the court by those persons who will be filing in-person) beginning on July 13, 2020. Before filing, landlords should review Sections 4023 and 4024 of The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), City Council Bill No. 200305 which was enacted on July 1, 2020, and provides for a Mandatory Hardship Repayment Agreement for certain residential tenants, and Governor Wolf's July 9, 2020 Executive Order that suspends eviction notice periods through August 31, 2020 for residential landlord-tenant cases in which the CARES Act is inapplicable and which are based on nonpayment of rent or termination of term.  Any landlord-tenant action filed on and after July 10, 2020 will be listed for trial on November 16, 2020 and thereafter.

(4)  The issuance and service of writs and alias writs of possession are stayed until September 3, 2020.  In calculating the six-month period set forth in Rule 126(e) ("[a]n alias writ of possession may not be issued after six months from the date of the judgment for possession without leave of court") and the 180-day period for serving alias writs of possession (the practice of the Philadelphia Municipal Court is to serve the alias writ of possession within 180 days from the entry of a judgment for possession), the time from

March 16, 2020 through and including September 2, 2020 shall be excluded from the computation of those time periods.

(5) Petitions previously filed in code enforcement shall be scheduled or rescheduled on or after July 27, 2020.

(6) Cases scheduled or rescheduled may be heard, as appropriate, utilizing Advanced Communication Technology as provided by protocols that may be issued from time to time.

(7) As to Philadelphia Municipal Court cases only, writs of execution and attachment seeking the enforcement of money judgments, including but not limited to garnishment of bank accounts, may be issued and served on or after July 13, 2020.

(8) **Information Regarding Appeals from Philadelphia Municipal Court Judgments.** A judgment of the Philadelphia Municipal Court may be appealed to the Court of Common Pleas as provided in Philadelphia Rule of Civil Procedure *1001.

To appeal to the Court of Common Pleas parties may email the Office of Judicial Records at OJR_Civil@courts.phila.gov or call (215) 686-4251 to ask about how to file an appeal to the Court of Common Pleas. Office of Judicial Records staff can assist the Appellant with using the Electronic Filing System so that the appealing party may file from home or Office of Judicial Records staff can make an appointment for the appealing party to file in person at the Civil Filing Center in City Hall during normal business hours.

(9) This Order supersedes conflicting provisions contained in President Judge Order No. 44 of 2020.

**BY THE COURT:**

/s/ *Idee C. Fox*                                              /s/ *Patrick F. Dugan*
**Hon. Idee C. Fox, President Judge**          **Hon. Patrick F. Dugan, President Judge**
**Court of Common Pleas**                            **Philadelphia Municipal Court**
**Philadelphia County**                                  **Philadelphia County**
**Chair, Administrative Governing Board**

Exhibit G



August 3, 2020

Dear Mr. Levy,

You are receiving this letter because you have recently filed several eviction cases despite the restrictions put in place by the Emergency Housing Protections Act ("EHPA") and the Governor's July 9, 2020 Executive Order (the "Order"). As you know, until August 31, 2020, a landlord cannot take any steps to evict a tenant except to prevent imminent harm by the tenant. *See* Sec. 2 of Bill No. 200295[1]. This includes sending a tenant a Notice to Quit and filing for an eviction in Municipal Court. In addition, the Order restricts a landlord's ability to commence eviction proceedings for nonpayment of rent also until August 31, 2020[2]. We are representing a tenant, Antonio Bowser, in one of the eviction cases you recently filed (LT-20-07-28-3550).

Filing this case has opened your client to liability under the PA Fair Uniform Extension of Credit Act ("FCEUA") and the PA Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). Your client is attempting to collect an alleged debt that they cannot legally collect at this time. Accordingly, we will be filing counterclaims asserting violations of the FCEUA and UTPCPL.

In addition, filing this case along with the other eviction cases you have filed recently has opened your firm to liability under the Fair Debt Collection Practices Act ("FDCPA"). Based on your firm's previous experiences with the FDCPA, you should know that the FDCPA is a strict liability statute and that a mistake of law or an incorrect interpretation of the law is not a defense.

If you have any questions, please contact me at vpatel@clsphila.org or 267-443-2687.

Sincerely,
Vikram Patel
Staff Attorney

---

[1] https://phila.legistar.com/View.ashx?M=F&ID=8645751&GUID=D6E66487-8994-456A-AF93-030E049B093E
[2] https://www.governor.pa.gov/wp-content/uploads/2020/07/20200709-TWW-eviction-order.pdf

# Exhibit H



Bart Elliott Levy, Counselor at Law
1500 Market Street, East Tower, 12th Floor, #3, Philadelphia, PA 19102

July 9, 2020

SECHANCIA SHAW
AND ALL OCCUPANTS
4924 N 8TH STREET
PHILADELPHIA, PA 19120

Re:     **Your Lease:**
        4924 N 8TH STREET, PHILADELPHIA, PA 19120

Dear Ms. Shaw,

Please be advised that I represent the owner of the above-referenced premises. Your right to possession under the lease is in jeopardy due to breaches of conditions of your lease including but not limited to habitual non- payment or habitual late payment of rent and failure to pay utilities. Your Landlord has decided to file suit in Landlord/Tenant court against you**.**

**SEPARATE FROM ANY MONIES YOU MAY OWE UNDER YOUR LEASE OR ANY OTHER ISSUE EFFECTING THIS TENANCY, YOUR LANDLORD HAS ELECTED TO TERMINATE YOUR LANDLORD - TENANT RELATIONSHIP.**

**The current balance owed is: $8,148.88 -** unpaid rent balance from February-2020 to July-2020. This amount includes unpaid rent, late fees, utilities, legal fees, and any other expenses you are responsible for per your lease. Pursuant to the above, you must vacate the premises and deliver possession to the owner sixty (60) days from the date of this letter. In addition, you are responsible for the payment of any expenses my client may incur in connection with the attempted re-rental of this unit, including but not limited to rental commission, and any and all physical damage to the unit, which may have been caused during the period of your tenancy.

This is an attempt to collect a debt. Accordingly, any information obtained will be used for that purpose. Unless you notify this office within sixty (60) days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume the debt is valid. If you notify this office in writing within sixty (60) days from receiving this notice that the debt, or any portion thereof, is disputed, this office will obtain verification of the debt and mail it to you. This sixty (60) day right to dispute the validity of the debt does not mean we cannot file a Landlord & Tenant complaint or take another action against you within the sixty (60) day period. However, if you dispute the validity of the debt in writing within sixty (60) days, we will not proceed with such action until we send the verification to you.

Best regards,

Bart Levy, Esquire.

# Exhibit I



# PHILADELPHIA MUNICIPAL COURT
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
1339 Chestnut Street, 10th Floor, Philadelphia, PA 19107

Patrick F. Dugan, President Judge          John J. Joyce, Deputy Court Administrator

# LANDLORD AND TENANT COMPLAINT

Date Filed: 07/30/2020                    # LT-20-07-30-3614

## Complaint Continuation

| | |
|---|---|
| NICHOLAS LOSCALZO<br>106 EXECUTIVE DRIVE<br>AMBLER, PA 19002<br><br>SANDRA LOSCALZO<br>106 EXECUTIVE DRIVE<br>AMBLER, PA 19002<br><br><br>*Plaintiff(s)* | SECHANCIA SHAW, AKA/DBA: AND ALL OCCUPANTS<br>4924 N 8TH STREET<br>PHILADELPHIA, PA 19120<br><br><br><br><br>*Defendant(s)* |

**I.**   Plaintiff states that he/she/it owns the real property located at the following address: 4924 N 8TH STREET, PHILADELPHIA, PA 19120. Plaintiff further states that there is a lease between him/her/it and the above-referenced defendant(s). The lease is written, attached and began on 08/05/2019 for the term of a year or more. Additionally, plaintiff states that the lease is residential.

**II.**   Plaintiff states that he/she/it is in compliance with Section 9-3902 of the Philadelphia Code by having a valid Rental License at the time of filing this complaint.
   * The Effective Date of the license is 04/24/2020 and its Expiration Date is 02/28/2021

   Plaintiff states that he/she/it had or has a Rental License for each month for which he/she/it is seeking unpaid rent in paragraph XI and that a copy of each applicable Rental License is attached.
   * License - Effective Date 04/24/2020 Expiration Date 02/28/2021

**III.**   Plaintiff states that he/she/it is in compliance with Section 9-3903 of the Philadelphia Code as a result of having provided the tenant with a Certificate of Rental Suitability and a copy of the City of Philadelphia Partners for Good Housing Handbook prior to the first month for which he/she/it is seeking unpaid rent in paragraph XI and the Certificate of Rental Suitability that was provided was issued by the Department no more than sixty days prior to the inception of the tenancy. A copy of any Certificate of Rental Suitability provided to the tenant is attached.
   * Certificate - Date Issued by Department 06/22/2020
   * Certificate - Date Issued by Department 06/29/2018



**PHILADELPHIA MUNICIPAL COURT**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
1339 Chestnut Street, 10th Floor, Philadelphia, PA 19107
Patrick F. Dugan, President Judge          John J. Joyce, Deputy Court Administrator

**LANDLORD AND TENANT COMPLAINT**

Date Filed: 07/30/2020                    # LT-20-07-30-3614

Complaint Continuation

IV.  Plaintiff states that the leased property:

    **A.**  was built before March of 1978.

    **B.**  is not a residential property developed by or for an educational institution for the exclusive use and occupancy by that institution's students.

    **C.**  is not owned or subsidized by the Philadelphia Housing Authority or its subsidiaries, or privately owned and leased under the Housing Choice Voucher Program; and

    **D.**  has not had and will not have a child aged six or younger.

    **E.**  The lease is effective from December 21, 2012 to the present.


V.  I have not provided the defendant with a valid certification prepared by a certified lead inspector stating that the property is either lead free or lead safe.

VI.  Plaintiff states that the subject premises is fit for its intended purpose.

Plaintiff states that he/she/it is unaware of any open notice issued by the Department of Licenses and Inspections ("Department") alleging that the property at issue is in violation of one or more provisions of the Philadelphia Code.

VII.  Plaintiff states that notice to vacate the subject premises by 09/08/2020 was given to the defendant on 07/09/2020. A copy of the notice is attached.

VIII.  The defendant is in possession of the property and refuses to surrender possession of the property.

IX.  Plaintiff demands a judgment of possession and a money judgment in the amount itemized below based on the following:



# PHILADELPHIA MUNICIPAL COURT
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
1339 Chestnut Street, 10th Floor, Philadelphia, PA 19107

Patrick F. Dugan, President Judge          John J. Joyce, Deputy Court Administrator

## LANDLORD AND TENANT COMPLAINT

Date Filed: 07/30/2020                    # LT-20-07-30-3614

### Complaint Continuation

\* Nonpayment of amounts due under the lease, for 6 months, from: FEBRUARY, 2020 to and including: JULY, 2020

| The amount of unpaid rent below and late fees alleged due. | | | | Summarized alleged amounts due: | |
|---|---|---|---|---|---|
| **Month** | **Year** | **Rent** | **Late Fee** | Rent | $6,600.00 |
| FEB. | 2020 | $1100.00 | $50.00 | Late Fees | $300.00 |
| MAR. | 2020 | $1100.00 | $50.00 | Gas | $0.00 |
| APR. | 2020 | $1100.00 | $50.00 | Electric | $0.00 |
| MAY | 2020 | $1100.00 | $50.00 | Water / Sewer | $598.88 |
| JUNE | 2020 | $1100.00 | $50.00 | Attorney's Fees | $650.00 |
| JULY | 2020 | $1100.00 | $50.00 | Other | $0.00 |
| | | | | **Subtotal** | $8,148.88 |
| WATER: $598.88 | | | | Court Costs | $121.75 |
| | | | | **Total** | $8,270.63 |

ONGOING RENT IN THE AMOUNT OF $1,100.00 FROM THE DATE OF THE FILING OF THIS COMPLAINT TO THE DATE OF THE HEARING ON THE MERITS IN THIS MATTER.

\* Termination of the term.

\* Breach of a condition(s) of the lease other than nonpayment of rent. The conditions allegedly breached were: Habitual non-payment or habitual late payment of rent by the tenant; Failure to pay utilities.

| **Filing Party:** Bart Elliott Levy, Esq.<br>ID: 204800<br>267-687-8000<br>1515 MARKET STREET, SUITE 950, PHILADELPHIA, PA 19102 | | **Phone Number:**<br>(267) 687-8000 |
|---|---|---|
| I am an attorney for the plaintiff(s), the plaintiff's authorized representative or have a power of attorney for the plaintiff(s) in this landlord tenant  action.  I hereby verify that I am authorized to make this verification; that I have sufficient knowledge, information and belief to take this verification or have gained sufficient knowledge, information and belief from communications with the plaintiff or the persons listed below and that the facts set forth are true and correct to the best of my knowledge, information and belief.  I understand that this verification is made subject to the penalties set forth in 18 Pa. C.S. &sect; 4904, which concerns the making of unsworn falsifications to authorities.  If I am an authorized representative or have a power of attorney, I have attached a completed Philadelphia Municipal Court authorized representative form or a completed power of attorney form.<br><br><br><br>BART ELLIOTT LEVY<br>_____<br>Signature Plantiff/Attorney | **SUMMONS TO THE DEFENDANT:**<br>You are hereby ordered to appear at a hearing scheduled as follows:<br>**LOCATION (SITO):**<br>1339 Chestnut Street 6th Floor<br>Philadelphia, PA 19107<br>Hearing Room: 3 | **CITATION:** Al demandado por la presente, usted esta dirijido a presentarse a la siguiente:<br><br>**DATE (FECHA):**<br>November 20th, 2020<br><br>**TIME (HORA):**<br>10:15 AM |
| **NOTICE TO THE DEFENDANT: YOU HAVE BEEN SUED IN COURT. PLEASE SEE ATTACHED NOTICE.** | | **NOTA IMPORTANTE PARA EL ACUSADO: USTED HA SIDO DEMANDO EN CORTE: POR FAVOR MIRA PAPELE ESCRITA.** |

# Exhibit J

IN THE PHILADELPHIA MUNICIPAL COURT

NICHOLAS LOSCALZO, SANDRA LC            :
                                        :
Plaintiff(s),                           :
                                        :
            v.                          :       LT-20-07-30-3614
                                        :
                                        :
SECHANCIA SHAW                          :
                                        :
Defendant(s).                           :

NOTICE OF NONCOMPLIANCE WITH
PHILADELPHIA MUNICIPAL COURT CIVIL RULE 109(4)

Pursuant to Rule 109(4), you are required to attach to your landlord-tenant complaint (1) a copy of the applicable Rental License for any month for which you are seeking to collect rent and (2) a copy of the Certificate of Rental Suitability that was provided to the tenant.  You have failed to do so as specified in the paragraphs that are checked below.

As a result of your failure to submit the required documents, you may not be able to collect rent for certain months and/or be unable to evict the tenant because of a Philadelphia Ordinance that prohibits a landlord from collecting rent or evicting a tenant under those circumstances.  You may bring to court on the day of your trial additional Rental Licenses or a Certificate of Rental Suitability that was provided to the tenant at an earlier date than the Certificate of Rental Suitability submitted with your landlord-tenant complaint.

[   ] **No Rental License.**  You have not submitted a Rental License.  A Philadelphia Ordinance prohibits the collection of rent or the eviction of a tenant unless the landlord has a Rental License that is in force at the time that of the filing of the landlord-tenant complaint.  Therefore, you will not be able to collect any unpaid rent unless you bring with you to court a Rental License that was in effect on the date that you filed your landlord-tenant complaint.

[ X ] **No Rental License for Certain Months for which Rent is Claimed.**  You are seeking unpaid rent for __3__ months from _____February_____ (month), __2020__ to and including _____April_____ (month), __2020__.  You have not submitted a Rental License that was in force for those months.  A Philadelphia Ordinance prohibits the collection of rent for those months in which there was no Rental License for those months in which there was no Rental License.  Therefore, you will not be able to collect unpaid rent for those months unless you bring with you to court Rental Licenses that were in effect for those months.

[    ] **No Certificate of Rental Suitability.**  You have not submitted a Certificate of Rental Suitability.  A Philadelphia Ordinance prohibits the collection of rent or the eviction of a tenant unless the landlord has provided the tenant with a Certificate of Rental Suitability.  Therefore, you will not be able to collect any unpaid rent unless you bring with you to court a Certificate of Rental Suitability.

[    ] **No Certificate of Rental Suitability for Certain Months for which Rent is Claimed.**
You are seeking unpaid rent for _____ months from _____ (month), _____ to and including _____ (months), _____.  The date on the Certificate of Rental Suitability that you submitted is after those months.  A Philadelphia Ordinance prohibits the collection of rent for those months prior to a landlord having provided a tenant with a Certificate of Rental Suitability and a copy of the City's Partners for Good Housing Handbook.  Therefore, you will not be able to collect rent for those months unless you bring with you to court a Certificate of Rental Suitability that was provided to the tenant prior to those months.

BRADLEY K. MOSS, J.
SUPERVISING JUDGE

# Exhibit K



Bart Elliott Levy, Counselor at Law
1500 Market Street, East Tower, 12th Floor, #3, Philadelphia, PA 19102

July 9, 2020

MARIE E WOSKOLUB
AND ALL OCCUPANTS
3531 ENGLEWOOD STREET
1ST FLOOR
PHILADELPHIA, PA 19149

Re:    **Your Lease:**
         3531 ENGLEWOOD STREET, 1ST FLOOR, PHILADELPHIA, PA 19149

Dear Ms. Woskolub,

Please be advised that I represent the owner of the above-referenced premises. Your right to possession under the lease is in jeopardy due to breaches of conditions of your lease including but not limited to habitual non- payment or habitual late payment of rent. Your Landlord has decided to file suit in Landlord/Tenant court against you**.**

**SEPARATE FROM ANY MONIES YOU MAY OWE UNDER YOUR LEASE OR ANY OTHER ISSUE EFFECTING THIS TENANCY, YOUR LANDLORD HAS ELECTED TO TERMINATE YOUR LANDLORD - TENANT RELATIONSHIP.**

**The current balance owed is: $2,910.00 -** unpaid rent balance from April-2020 to July-2020. This amount includes unpaid rent, late fees, legal fees, and any other expenses you are responsible for per your lease. Pursuant to the above, you must vacate the premises and deliver possession to the owner sixty (60) days from the date of this letter. In addition, you are responsible for the payment of any expenses my client may incur in connection with the attempted re-rental of this unit, including but not limited to rental commission, and any and all physical damage to the unit, which may have been caused during the period of your tenancy.

This is an attempt to collect a debt. Accordingly, any information obtained will be used for that purpose. Unless you notify this office within sixty (60) days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume the debt is valid. If you notify this office in writing within sixty (60) days from receiving this notice that the debt, or any portion thereof, is disputed, this office will obtain verification of the debt and mail it to you. This sixty (60) day right to dispute the validity of the debt does not mean we cannot file a Landlord & Tenant complaint or take another action against you within the sixty (60) day period. However, if you dispute the validity of the debt in writing within sixty (60) days, we will not proceed with such action until we send the verification to you.

Best regards,

Bart Levy, Esquire.

# Exhibit L



# PHILADELPHIA MUNICIPAL COURT
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
1339 Chestnut Street, 10th Floor, Philadelphia, PA 19107

Patrick F. Dugan, President Judge          John J. Joyce, Deputy Court Administrator

# LANDLORD AND TENANT COMPLAINT

Date Filed: 07/28/2020                    # LT-20-07-28-3542

## Complaint Continuation

| | |
|---|---|
| RICHARD TURCHI<br>1221 HAWTHORNE ROAD<br>BENSALEM, PA 19020<br><br>*Plaintiff(s)* | MARIE E WOSKOLUB, AKA/DBA: AND ALL OCCUPANTS<br>3531 ENGLEWOOD STREET 1ST FLOOR<br>PHILADELPHIA, PA 19149<br><br>*Defendant(s)* |

**I.**   Plaintiff states that he/she/it owns the real property located at the following address: 3531 ENGLEWOOD STREET, 1ST FLOOR, PHILADELPHIA, PA 19149. Plaintiff further states that there is a lease between him/her/it and the above-referenced defendant(s). The lease is written, attached and began on 04/05/2008 for the term of a year or more. Additionally, plaintiff states that the lease is residential.

**II.**   Plaintiff states that he/she/it is in compliance with Section 9-3902 of the Philadelphia Code by having a valid Rental License at the time of filing this complaint.
  * The Effective Date of the license is 08/27/2019 and its Expiration Date is 08/26/2020

  Plaintiff states that he/she/it had or has a Rental License for each month for which he/she/it is seeking unpaid rent in paragraph XI and that a copy of each applicable Rental License is attached.
  * License - Effective Date 08/27/2019 Expiration Date 08/26/2020

**III.**   Plaintiff states that he/she/it was not required to provide the tenant with a Certificate of Rental Suitability and a copy of the City of Philadelphia Partners for Good Housing Handbook because he/she/it falls within one of the following exceptions: (1) the lease at issue was executed prior to August 6, 2011; (2) the plaintiff is not required to have a rental license; (3) the tenant is a member of the owner's family; or (4) the plaintiff is not subject to these requirements pursuant to the terms of a Memorandum of Understanding between the plaintiff and the City of Philadelphia.

**IV.**   Plaintiff states that the leased property:

    **A.**   was built before March of 1978.

    **B.**   is not a residential property developed by or for an educational institution for the exclusive use and occupancy by that institution's students.

    **C.**   is not owned or subsidized by the Philadelphia Housing Authority or its subsidiaries, or privately owned and leased under the Housing Choice Voucher Program; and

    **D.**   has not had and will not have a child aged six or younger.

    **E.**   The lease is effective prior to December 21, 2012.



**PHILADELPHIA MUNICIPAL COURT**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
1339 Chestnut Street, 10th Floor, Philadelphia, PA 19107
Patrick F. Dugan, President Judge          John J. Joyce, Deputy Court Administrator

# LANDLORD AND TENANT COMPLAINT

Date Filed: 07/28/2020                          # LT-20-07-28-3542

## Complaint Continuation

**V.** I have not provided the defendant with a valid certification prepared by a certified lead inspector stating that the property is either lead free or lead safe.

**VI.** Plaintiff states that the subject premises is fit for its intended purpose.

Plaintiff states that he/she/it is unaware of any open notice issued by the Department of Licenses and Inspections ("Department") alleging that the property at issue is in violation of one or more provisions of the Philadelphia Code.

**VII.** Plaintiff states that notice to vacate the subject premises by 09/08/2020 was given to the defendant on 07/09/2020. A copy of the notice is attached.

**VIII.** The defendant is in possession of the property and refuses to surrender possession of the property.

**IX.** Plaintiff demands a judgment of possession and a money judgment in the amount itemized below based on the following:

* Nonpayment of amounts due under the lease, for 4 months, **from:** APRIL, 2020 **to and including:** JULY, 2020

| The amount of unpaid rent below and late fees alleged due. | | | | Summarized alleged amounts due: | |
|---|---|---|---|---|---|
| **Month** | **Year** | **Rent** | **Late Fee** | Rent | $2,460.00 |
| APR. | 2020 | $315.00 | $25.00 | Late Fees | $100.00 |
| MAY | 2020 | $715.00 | $25.00 | Gas | $0.00 |
| JUNE | 2020 | $715.00 | $25.00 | Electric | $0.00 |
| JULY | 2020 | $715.00 | $25.00 | Water / Sewer | $0.00 |
| | | | | Attorney's Fees | $350.00 |
| | | | | Other | $0.00 |
| | | | | **Subtotal** | $2,910.00 |
| | | | | Court Costs | $121.75 |
| | | | | **Total** | $3,031.75 |

ONGOING RENT IN THE AMOUNT OF $715.00 FROM THE DATE OF THE FILING OF THIS COMPLAINT TO THE DATE OF THE HEARING ON THE MERITS IN THIS MATTER.

* Termination of the term.



# PHILADELPHIA MUNICIPAL COURT
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
1339 Chestnut Street, 10th Floor, Philadelphia, PA 19107

Patrick F. Dugan, President Judge          John J. Joyce, Deputy Court Administrator

# LANDLORD AND TENANT COMPLAINT

Date Filed: 07/28/2020                    # LT-20-07-28-3542

## Complaint Continuation

\* Breach of a condition(s) of the lease other than nonpayment of rent. The conditions allegedly breached were: Habitual non-payment or habitual late payment of rent by the tenant.

| | | |
|---|---|---|
| **Filing Party:** BART ELLIOTT LEVY, ESQ.<br>ID: 204800<br>267-687-8000<br>1515 MARKET STREET, SUITE 950, PHILADELPHIA, PA 19102 | | **Phone Number:**<br>(267) 687-8000 |
| I am an attorney for the plaintiff(s), the plaintiff's authorized representative or have a power of attorney for the plaintiff(s) in this landlord tenant action. I hereby verify that I am authorized to make this verification; that I have sufficient knowledge, information and belief to take this verification or have gained sufficient knowledge, information and belief from communications with the plaintiff or the persons listed below and that the facts set forth are true and correct to the best of my knowledge, information and belief. I understand that this verification is made subject to the penalties set forth in 18 Pa. C.S. &sect; 4904, which concerns the making of unsworn falsifications to authorities. If I am an authorized representative or have a power of attorney, I have attached a completed Philadelphia Municipal Court authorized representative form or a completed power of attorney form. | **SUMMONS TO THE DEFENDANT:**<br>You are hereby ordered to appear at a hearing scheduled as follows:<br><br>**LOCATION (SITO):**<br>1339 Chestnut Street 6th Floor<br>Philadelphia, PA 19107<br>Hearing Room: 3 | **CITATION:** Al demandado por la presente, usted esta dirijido a presentarse a la siguiente:<br><br>**DATE (FECHA):**<br>November 17th, 2020<br><br>**TIME (HORA):**<br>01:30 PM |
| BART ELLIOTT LEVY<br>_____<br>Signature Plantiff/Attorney | | |
| **NOTICE TO THE DEFENDANT: YOU HAVE BEEN SUED IN COURT. PLEASE SEE ATTACHED NOTICE.** | **NOTA IMPORTANTE PARA EL ACUSADO: USTED HA SIDO DEMANDO EN CORTE: POR FAVOR MIRA PAPELE ESCRITA.** | |

# Exhibit M

# Calah Self
# 3644-46 Old York Rd
# Philadelphia, PA 19140

July 2, 2020

Antonio Bowser and Michelle McMillian and ALL OCCUPANTS
1132 West Venango Street 2nd Floor, Philadelphia, PA 19140

**This letter is to inform Mr. Antonio Bowser, Ms. Michelle McMillian, and all other occupants of 1132 West Venango Street 2nd floor that they have 5 days from the date of this letter as agreed upon in signing of your lease to VACATE THE PREMISIS NON-PAYMENT OF RENT amongst other reasons listed below.**

- Habitual non-payment or habitual late payment of rent

- Breach of or non-compliance with a material term of the lease

- Nuisance activity that substantially interferes with other tenants use of the property

- Causing substantial deterioration of the property beyond normal wear and tear

- After receiving written notice, the tenant refuses the landlord access for purpose such as inspecting for damage or assessing the need for repairs

- The landlord or a member of the landlord's immediate family is going to move into the unit

The agreed upon monthly rent is due on the 1st of each month.  As of Thursday, July 2, 2020, rent for June in the amount of $750.00 is PASTDUE.  A $75.00 late fee was also added to your account for June 2020. If the property is not vacated by July 7, 2020 rent for the month of July will also be

[Phone]215-432-6477 
[Email]Calah79@gmail.com
3644-46 Old York Road, Phila. PA 19140 

# Calah Self
# 3644-46 Old York Rd
# Philadelphia, PA 19140

charged.  You are responsible for repair costs in the amount of $75.00 for the electric heater in which was damaged by tenants, $20.00 for a missing door knob for the middle bedroom door, and $200.00 for repairs of the closet door in the front bedroom.  You are also responsible for Attorney fees and court costs which are to be determined based on the outcome of vacancy.  If paid after July 7, 2020, the total balance due is $1,870.00. Upon signing of lease, you paid $750.00 for last month's rent and a security deposit of $750.00. I can apply that to your balance and if vacated by July 7, 2020, the remaining balance of $380.00 will be issued to you.  If the property is not vacated by July 7th, 2020, you will have a remaining balance of $370.00 with no refund due to you.  Please call or text me your date to vacate so we can make further arrangements for security deposit refund, key return and final inspection.


Warm regards,

*Calah Self*

**Calah Self**
Landlord / Property Owner

[Phone]215-432-6477 
[Email]Calah79@gmail.com
3644-46 Old York Road, Phila. PA 19140 

# Exhibit N



Bart Elliott Levy, Counselor at Law
1500 Market Street, East Tower, 12th Floor, #3, Philadelphia, PA 19102

July 9, 2020

ANTONIO BOWSER
MICHELLE MCMILLIAN
AND ALL OCCUPANTS
1132 W VENANGO STREET
2ND FLOOR
PHILADELPHIA, PA 19140

**Re:      Your Lease:**
1132 W VENANGO STREET, 2ND FLOOR, PHILADELPHIA, PA 19140

Dear Mr. Bowser & Ms. McMllian,

Please be advised that I represent the owner of the above-referenced premises. Your right to possession under the lease is in jeopardy due to breaches of conditions of your lease including but not limited to habitual non- payment or habitual late payment of rent; Breach of or non-compliance with a material term of the lease; Nuisance activity that substantially interferes with other tenants' use of the property; Causing substantial deterioration of the property beyond normal wear and tear; After receiving written notice, the tenant refuses the landlord access for purposes such as inspecting for damage or assessing the need for repairs. Please be advised that the landlord or a member of the landlord's immediate family is going to move into the unit. Your Landlord has decided to file suit in Landlord/Tenant court against you**.**

**SEPARATE FROM ANY MONIES YOU MAY OWE UNDER YOUR LEASE OR ANY OTHER ISSUE EFFECTING THIS TENANCY, YOUR LANDLORD HAS ELECTED TO TERMINATE YOUR LANDLORD - TENANT RELATIONSHIP.**

**The current balance owed is: $1,175.00 -** unpaid rent balance for July-2020. This amount includes unpaid rent, late fees, legal fees, and any other expenses you are responsible for per your lease. Pursuant to the above, you must vacate the premises and deliver possession to the owner sixty (60) days from the date of this letter. In addition, you are responsible for the payment of any expenses my client may incur in connection with the attempted re-rental of this unit, including but not limited to rental commission, and any and all physical damage to the unit, which may have been caused during the period of your tenancy.

This is an attempt to collect a debt. Accordingly, any information obtained will be used for that purpose. Unless you notify this office within sixty (60) days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume the debt is valid. If you notify this office in writing within sixty (60) days from receiving this notice that the debt, or any portion thereof, is disputed, this office will obtain verification of the debt and mail it to you. This sixty (60) day right to dispute the validity of the debt does not mean we cannot file a Landlord & Tenant complaint or take another action against you within the sixty (60) day period. However, if you dispute the validity of the debt in writing within sixty (60) days, we will not proceed with such action until we send the verification to you.

Best regards,

Bart Levy, Esquire.

Exhibit O



**PHILADELPHIA MUNICIPAL COURT**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
1339 Chestnut Street, 10th Floor, Philadelphia, PA 19107
Patrick F. Dugan, President Judge          John J. Joyce, Deputy Court Administrator

## LANDLORD AND TENANT COMPLAINT

Date Filed: 07/28/2020                    # LT-20-07-28-3550

### Complaint Continuation

| | |
|---|---|
| CALAH D SELF<br>3644-46 OLD YORK ROAD<br>PHILADELPHIA, PA 19140 | ANTONIO BOWSER, AKA/DBA: AND ALL OCCUPANTS<br>1132 W VENANGO STREET 2ND FLOOR<br>PHILADELPHIA, PA 19140<br><br>MICHELLE MCMILLIAN, AKA/DBA: AND ALL OCCUPANTS<br>1132 W VENANGO STREET 2ND FLOOR<br>PHILADELPHIA, PA 19140 |
| *Plaintiff(s)* | *Defendant(s)* |

**I.**    Plaintiff states that he/she/it owns the real property located at the following address: 1132 W VENANGO STREET, 2ND FLOOR, PHILADELPHIA, PA 19140. Plaintiff further states that there is a lease between him/her/it and the above-referenced defendant(s). The lease is written, attached and began on 02/01/2020 for the term of month to month. Additionally, plaintiff states that the lease is residential.

**II.**    Plaintiff states that he/she/it is in compliance with Section 9-3902 of the Philadelphia Code by having a valid Rental License at the time of filing this complaint.
*   The Effective Date of the license is 03/03/2020 and its Expiration Date is 02/28/2021

Plaintiff states that he/she/it had or has a Rental License for each month for which he/she/it is seeking unpaid rent in paragraph XI and that a copy of each applicable Rental License is attached.
*   License - Effective Date 03/03/2020 Expiration Date 02/28/2021

**III.**    Plaintiff states that he/she/it is in compliance with Section 9-3903 of the Philadelphia Code as a result of having provided the tenant with a Certificate of Rental Suitability and a copy of the City of Philadelphia Partners for Good Housing Handbook prior to the first month for which he/she/it is seeking unpaid rent in paragraph XI and the Certificate of Rental Suitability that was provided was issued by the Department no more than sixty days prior to the inception of the tenancy. A copy of any Certificate of Rental Suitability provided to the tenant is attached.
*   Certificate - Date Issued by Department 06/22/2020



**PHILADELPHIA MUNICIPAL COURT**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
1339 Chestnut Street, 10th Floor, Philadelphia, PA 19107
Patrick F. Dugan, President Judge          John J. Joyce, Deputy Court Administrator

**LANDLORD AND TENANT COMPLAINT**

Date Filed: 07/28/2020                    # LT-20-07-28-3550

Complaint Continuation

IV.   Plaintiff states that the leased property:

    **A.**   was built before March of 1978.

    **B.**   is not a residential property developed by or for an educational institution for the exclusive use and occupancy by that institution's students.

    **C.**   is not owned or subsidized by the Philadelphia Housing Authority or its subsidiaries, or privately owned and leased under the Housing Choice Voucher Program; and

    **D.**   has not had and will not have a child aged six or younger.

    **E.**   The lease is effective from December 21, 2012 to the present.

V.    I have not provided the defendant with a valid certification prepared by a certified lead inspector stating that the property is either lead free or lead safe.

VI.   Plaintiff states that the subject premises is fit for its intended purpose.

    Plaintiff states that he/she/it is unaware of any open notice issued by the Department of Licenses and Inspections ("Department") alleging that the property at issue is in violation of one or more provisions of the Philadelphia Code.

VII.  Plaintiff states that notice to vacate the subject premises by 09/08/2020 was given to the defendant on 07/09/2020. A copy of the notice is attached.

VIII. The defendant is in possession of the property and refuses to surrender possession of the property.

IX.   Plaintiff demands a judgment of possession and a money judgment in the amount itemized below based on the following:



# PHILADELPHIA MUNICIPAL COURT
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
1339 Chestnut Street, 10th Floor, Philadelphia, PA 19107

Patrick F. Dugan, President Judge          John J. Joyce, Deputy Court Administrator

# LANDLORD AND TENANT COMPLAINT

Date Filed: 07/28/2020                    # LT-20-07-28-3550

## Complaint Continuation

* Nonpayment of amounts due under the lease, for 1 months, from: JULY, 2020 to and including: JULY, 2020

| The amount of unpaid rent below and late fees alleged due. | | | | Summarized alleged amounts due: | |
|---|---|---|---|---|---|
| **Month** | **Year** | **Rent** | **Late Fee** | Rent | $750.00 |
| JULY | 2020 | $750.00 | $75.00 | Late Fees | $75.00 |
| | | | | Gas | $0.00 |
| | | | | Electric | $0.00 |
| | | | | Water / Sewer | $0.00 |
| | | | | Attorney's Fees | $350.00 |
| | | | | Other | $0.00 |
| | | | | **Subtotal** | $1,175.00 |
| | | | | Court Costs | $105.25 |
| | | | | **Total** | $1,280.25 |

ONGOING RENT IN THE AMOUNT OF $750.00 FROM THE DATE OF THE FILING OF THIS COMPLAINT TO THE DATE OF THE HEARING ON THE MERITS IN THIS MATTER.

* Termination of the term.

* Breach of a condition(s) of the lease other than nonpayment of rent. The conditions allegedly breached were: Habitual non-payment or habitual late payment of rent by the tenants; Breach of or non-compliance with a material term of the lease; Nuisance activity that substantially interferes with other tenants' use of the property; Causing substantial deterioration of the property beyond normal wear and tear; After receiving written notice, the tenant refuses the landlord access for purposes such as inspecting for damage or assessing the need for repairs.

* Other as specified: The landlord or a member of the landlord's immediate family is going to move into the unit.

| Filing Party: Bart Elliott Levy, Esq.<br>ID: 204800<br>267-687-8000<br>1515 MARKET STREET, SUITE 950, PHILADELPHIA, PA 19102 | | Phone Number:<br>(267) 687-8000 |
|---|---|---|
| I am an attorney for the plaintiff(s), the plaintiff's authorized representative or have a power of attorney for the plaintiff(s) in this landlord tenant action. I hereby verify that I am authorized to make this verification; that I have sufficient knowledge, information and belief to take this verification or have gained sufficient knowledge, information and belief from communications with the plaintiff or the persons listed below and that the facts set forth are true and correct to the best of my knowledge, information and belief. I understand that this verification is made subject to the penalties set forth in 18 Pa. C.S. &sect; 4904, which concerns the making of unsworn falsifications to authorities. If I am an authorized representative or have a power of attorney, I have attached a completed Philadelphia Municipal Court authorized representative form or a completed power of attorney form. | **SUMMONS TO THE DEFENDANT:**<br>You are hereby ordered to appear at a hearing scheduled as follows:<br><br>**LOCATION (SITO):**<br>1339 Chestnut Street 6th Floor<br>Philadelphia, PA 19107<br>Hearing Room: 3 | **CITATION:** Al demandado por la presente, usted esta dirijido a presentarse a la siguiente:<br><br>**DATE (FECHA):**<br>November 17th, 2020<br><br>**TIME (HORA):**<br>10:15 AM |
| BART ELLIOTT LEVY<br>_____<br>Signature Plantiff/Attorney | | |
| **NOTICE TO THE DEFENDANT: YOU HAVE BEEN SUED IN COURT. PLEASE SEE ATTACHED NOTICE.** | **NOTA IMPORTANTE PARA EL ACUSADO: USTED HA SIDO DEMANDO EN CORTE: POR FAVOR MIRA PAPELE ESCRITA.** | |

Exhibit P



Bart Elliott Levy, Counselor at Law
1500 Market Street, East Tower, 12th Floor, #3, Philadelphia, PA 19102

**July 9, 2020**

Donna Johnson
Gerald Johnson
AND ALL OCCUPANTS
848 LOCUST AVENUE
Philadelphia, PA 19138


Re:   <u>**Your Lease**</u>:
      848 LOCUST AVENUE, Philadelphia, PA 19138


Dear Mr. & Mrs. Johnson,

Please be advised that I represent the owner of the above-referenced premises. Your right to possession under the lease is in jeopardy due to breaches of conditions of your lease including but not limited to habitual non- payment or habitual late payment of rent. Your Landlord has decided to file suit in Landlord/Tenant court against you**.**

**SEPARATE FROM ANY MONIES YOU MAY OWE UNDER YOUR LEASE OR ANY OTHER ISSUE EFFECTING THIS TENANCY, YOUR LANDLORD HAS ELECTED TO TERMINATE YOUR LANDLORD - TENANT RELATIONSHIP.**

**The current balance owed is: $1,280.00 -** unpaid rent balance for July -2020. This amount includes unpaid rent, late fees, legal fees, and any other expenses you are responsible for per your lease. Pursuant to the above, you must vacate the premises and deliver possession to the owner sixty (60) days from the date of this letter. In addition, you are responsible for the payment of any expenses my client may incur in connection with the attempted re-rental of this unit, including but not limited to rental commission, and any and all physical damage to the unit, which may have been caused during the period of your tenancy.

This is an attempt to collect a debt. Accordingly, any information obtained will be used for that purpose. Unless you notify this office within sixty (60) days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume the debt is valid. If you notify this office in writing within sixty (60) days from receiving this notice that the debt, or any portion thereof, is disputed, this office will obtain verification of the debt and mail it to you. This sixty (60) day right to dispute the validity of the debt does not mean we cannot file a Landlord & Tenant complaint or take another action against you within the sixty (60) day period. However, if you dispute the validity of the debt in writing within sixty (60) days, we will not proceed with such action until we send the verification to you.


Best regards,

Bart Levy, Esquire.

Exhibit Q



# PHILADELPHIA MUNICIPAL COURT
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
1339 Chestnut Street, 10th Floor, Philadelphia, PA 19107

Patrick F. Dugan, President Judge          John J. Joyce, Deputy Court Administrator

# LANDLORD AND TENANT COMPLAINT

Date Filed: 08/12/2020                    # LT-20-08-12-3263

## Complaint Continuation

| | |
|---|---|
| CARL DEFILIPPO<br>605 MayFair Drive South<br>Brooklyn, NY 11234<br><br><br>***Plaintiff(s)*** | Donna Johnson, AKA/DBA: AND ALL OCCUPANTS<br>848 LOCUST AVENUE<br>Philadelphia, PA 19138<br><br>Gerald Johnson, AKA/DBA: AND ALL OCCUPANTS<br>848 LOCUST AVENUE<br>Philadelphia, PA 19138<br>***Defendant(s)*** |

**I.**   Plaintiff states that he/she/it owns the real property located at the following address: 848 LOCUST AVENUE, Philadelphia, PA 19138. Plaintiff further states that there is a lease between him/her/it and the above-referenced defendant(s). The lease is written, attached and began on 06/15/2019 for the term of a year or more. Additionally, plaintiff states that the lease is residential.

**II.**   Plaintiff states that he/she/it is in compliance with Section 9-3902 of the Philadelphia Code by having a valid Rental License at the time of filing this complaint.
  * The Effective Date of the license is 03/23/2020 and its Expiration Date is 02/28/2021

Plaintiff states that he/she/it had or has a Rental License for each month for which he/she/it is seeking unpaid rent in paragraph XI and that a copy of each applicable Rental License is attached.
  * License - Effective Date 03/23/2020 Expiration Date 02/28/2021

**III.**   Plaintiff states that he/she/it is in compliance with Section 9-3903 of the Philadelphia Code as a result of having provided the tenant with a Certificate of Rental Suitability and a copy of the City of Philadelphia Partners for Good Housing Handbook prior to the first month for which he/she/it is seeking unpaid rent in paragraph XI and the Certificate of Rental Suitability that was provided was issued by the Department no more than sixty days prior to the inception of the tenancy. A copy of any Certificate of Rental Suitability provided to the tenant is attached.
  * Certificate - Date Issued by Department 06/23/2020



**PHILADELPHIA MUNICIPAL COURT**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
1339 Chestnut Street, 10th Floor, Philadelphia, PA 19107
Patrick F. Dugan, President Judge          John J. Joyce, Deputy Court Administrator

**LANDLORD AND TENANT COMPLAINT**

Date Filed: 08/12/2020                              # LT-20-08-12-3263

Complaint Continuation

IV.   Plaintiff states that the leased property:

    **A.**   was built before March of 1978.

    **B.**   is not a residential property developed by or for an educational institution for the exclusive use and occupancy by that institution's students.

    **C.**   is not owned or subsidized by the Philadelphia Housing Authority or its subsidiaries, or privately owned and leased under the Housing Choice Voucher Program; and

    **D.**   has not had and will not have a child aged six or younger.

    **E.**   The lease is effective from December 21, 2012 to the present.

V.   I have not provided the defendant with a valid certification prepared by a certified lead inspector stating that the property is either lead free or lead safe.

VI.   Plaintiff states that the subject premises is fit for its intended purpose.

    Plaintiff states that he/she/it is unaware of any open notice issued by the Department of Licenses and Inspections ("Department") alleging that the property at issue is in violation of one or more provisions of the Philadelphia Code.

VII.   Plaintiff states that notice to vacate the subject premises by 09/08/2020 was given to the defendant on 07/09/2020. A copy of the notice is attached.

VIII.   The defendant is in possession of the property and refuses to surrender possession of the property.

IX.   Plaintiff demands a judgment of possession and a money judgment in the amount itemized below based on the following:



# PHILADELPHIA MUNICIPAL COURT
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
1339 Chestnut Street, 10th Floor, Philadelphia, PA 19107

Patrick F. Dugan, President Judge          John J. Joyce, Deputy Court Administrator

## LANDLORD AND TENANT COMPLAINT

Date Filed: 08/12/2020                    # LT-20-08-12-3263

### Complaint Continuation

\* Nonpayment of amounts due under the lease, for 2 months, from: July, 2020 to and including: August, 2020

| The amount of unpaid rent below and late fees alleged due. | | | | Summarized alleged amounts due: | |
|---|---|---|---|---|---|
| **Month** | **Year** | **Rent** | **Late Fee** | Rent | $1,760.00 |
| July | 2020 | $880.00 | $50.00 | Late Fees | $100.00 |
| August | 2020 | $880.00 | $50.00 | Gas | $0.00 |
| | | | | Electric | $0.00 |
| | | | | Water / Sewer | $0.00 |
| | | | | Attorney's Fees | $350.00 |
| | | | | Other | $0.00 |
| | | | | **Subtotal** | $2,210.00 |
| | | | | Court Costs | $127.25 |
| | | | | **Total** | $2,337.25 |

ONGOING RENT IN THE AMOUNT OF $880.00 FROM THE DATE OF THE FILING OF THIS COMPLAINT TO THE DATE OF THE HEARING ON THE MERITS IN THIS MATTER.

\* Termination of the term.

\* Breach of a condition(s) of the lease other than nonpayment of rent. The conditions allegedly breached were: Habitual non-payment or habitual late payment of rent by the tenants.

| **Filing Party:** Bart Elliott Levy, Esq.<br>ID: 204800<br>267-687-8000<br>1515 MARKET STREET, SUITE 950, PHILADELPHIA, PA 19102 | | **Phone Number:**<br>(267) 687-8000 |
|---|---|---|
| I am an attorney for the plaintiff(s), the plaintiff's authorized representative or have a power of attorney for the plaintiff(s) in this landlord tenant action. I hereby verify that I am authorized to make this verification; that I have sufficient knowledge, information and belief to take this verification or have gained sufficient knowledge, information and belief from communications with the plaintiff or the persons listed below and that the facts set forth are true and correct to the best of my knowledge, information and belief. I understand that this verification is made subject to the penalties set forth in 18 Pa. C.S. &sect; 4904, which concerns the making of unsworn falsifications to authorities. If I am an authorized representative or have a power of attorney, I have attached a completed Philadelphia Municipal Court authorized representative form or a completed power of attorney form.<br><br><br>BART ELLIOTT LEVY<br>_____<br>Signature Plantiff/Attorney | **SUMMONS TO THE DEFENDANT:**<br>You are hereby ordered to appear at a hearing scheduled as follows:<br><br>**LOCATION (SITO):**<br>1339 Chestnut Street 6th Floor<br>Philadelphia, PA 19107<br>Hearing Room: 3 | **CITATION:** Al demandado por la presente, usted esta dirijido a presentarse a la siguiente:<br><br>**DATE (FECHA):**<br>November 23rd, 2020<br><br>**TIME (HORA):**<br>11:00 AM |
| **NOTICE TO THE DEFENDANT: YOU HAVE BEEN SUED IN COURT. PLEASE SEE ATTACHED NOTICE.** | | **NOTA IMPORTANTE PARA EL ACUSADO: USTED HA SIDO DEMANDO EN CORTE: POR FAVOR MIRA PAPELE ESCRITA.** |